Albert LEWIS, et al., Plaintiffs,

v.

MacMILLAN–BLOEDEL,
INC., Defendant.

Civ. A. No. CV 83–1429–H.

United States District Court,
S.D. Alabama, N.D.

Nov. 17, 1986.

Albert Lewis, pro se.

Robert Howard, pro se.

Bruce Boynton (Court-appointed), Selma, Ala., for Robert L. Howard and Albert Lewis.

William F. Gardner, William K. Thomas, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for MacMillan-Bloedel, Inc.

John C. Falkenberry, Birmingham, Ala., for U.P.I.W. Local 336.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAND, Chief Judge.

This case came on for trial to the Court on November 3, 1986. At the close of each plaintiff's case, the defendant, pursuant to F.R.C.P. 41(b), moved for involuntary dismissal on the grounds that upon the facts and law the plaintiffs had shown no right to relief. After considering the evidence presented by the plaintiffs, the applicable law, and the argument of counsel, the Court determined to grant the motions. On the evidence presented by the plaintiffs, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The following facts appear from the evidence presented by the plaintiffs and from the agreed facts as set forth by counsel for the parties in the Pre-trial Order.

A. *General.*

1. MacMillan Bloedel, Inc. ("the Company") operates three divisions at Pine Hill, Alabama. Such divisions are (a) the Pulp and Paper Division, (b) the Wood Products Division, and (c) the Woodlands Division. Each such division is governed by a separate collective bargaining agreement.

2. This case concerns the Pulp and Paper Division since plaintiff Robert Howard is in the Pulp and Paper Division and plaintiff Albert Lewis was in the Pulp and Paper Division.

B. *Plaintiff Robert Howard.*

1. Plaintiff Robert Howard was hired on April 25, 1973, in the Pulp and Paper Division.

2. On November 8, 1976, Howard bid on the Utility job in the Pulp Mill and was awarded such job.

3. Howard is presently holding the job of 2nd Assistant Pulping Operator in the Pulp Mill. Such job is the third job from the top of the line of progression.

4. In 1974, while Howard was still in the Labor & Relief Crew, he filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging he was discriminated against in not having been hired as a Maintenance Mechanic. Such charge was settled by a "no fault" EEOC settlement agreement in 1977, under which he was paid an agreed sum of money and which included a provision that "It is agreed that the Charging Party will be promoted to openings occurring after the execution and approval of this Agreement in the Utility 'A' Mechanic job in the Maintenance line of progression in accordance with his seniority."

5. No one with less seniority thereafter moved to such utility jobs. Accordingly, the Settlement Agreement has not in any way been breached. Plaintiff Howard

agreed to and signed an agreement to move to such job "in accordance with his seniority", so the fact no one with less seniority thereafter moved to the job precludes any claim of non-compliance. In this regard, it might also be noted that in testifying, plaintiff Howard ultimately came to the point of agreeing he had been represented by counsel in connection with such settlement agreement.

6. The Mechanic jobs, in descending order, are the following:

— General Mechanic
— AA Mechanic
— A. Mechanic
— B Mechanic
— C Mechanic

7. The Mechanic jobs are filled by outside hiring and by internal transfers of employees from production jobs, subject to the provisions of the Union contract. Most of the openings in Mechanic jobs have been filled by hiring from outside.

8. Mr. Howard agreed in his testimony that the persons who have been hired from the outside for the Mechanic jobs are both black and white, and similarly the production employees who have been transferred to Mechanic are both black and white.

9. Production employees who are interested in transferring to Mechanic apply for such transfer and take an examination known as the Mechanic C test.

10. In 1980, Mr. Howard successfully passed the Mechanic C test. His name has been and remains on the Company's list of employees applying for and eligible for transfer to Maintenance Mechanic.

11. Both white and black employees are and have been on such list of employees eligible to transfer to the Mechanic C job.

12. The names of the employees eligible to transfer to Mechanic have been lined up on the lists in order of seniority. According to Mr. Howard's testimony, he has been No. 12 on the list since 1980, which would mean that there have been 11 employees with more seniority ahead of him.

13. In April of 1981, the Company hired Joe Lolley as a Mechanic B. Mr. Howard contends that Joe Lolley, who is white, was no more qualified than he and that in hiring Mr. Lolley, the Company discriminated against Mr. Howard because of his race. The evidence also establishes that during 1981 and 1982, the Company hired Clifton Phillips and Earl Parrish in the Mechanic A job, with the last of such hires occurring in August 1982.

14. The evidence establishes that at the time Joe Lolley was hired, Mr. Howard was No. 12 on the list of employees eligible for transfer to Mechanic, and that all of the employees with more seniority above him on the list were, with one exception, white. Similarly, the persons above Mr. Howard on the transfer list when Clifton Phillips and Earl Parrish were hired were mostly white. Accordingly, with respect to the hiring of Lolley, Phillips, and Parrish, Mr. Howard was in no different position than those white employees with more seniority than Mr. Howard who had similarly applied for and were eligible for, but had not been transferred to the Mechanic job.

15. The non-racial nature of the situation was recognized by Mr. Howard himself in testifying that all of the persons on the transfer list, both black and white, were in the same situation, and the hiring discriminated against all of them, including him. The alleged discrimination to which he had reference obviously was not racial, as most of the employees on the transfer list were white.

16. Since Mr. Howard's seniority placed him in the No. 12 position on the transfer list, he was 11 positions away from being the employee with the most to complain about with regard to the hiring of Joe Lolley as a Mechanic B. The majority of such 11 employees were white.

17. The hiring of Joe Lolley resulted in the filing of grievances. The matter was resolved by a settlement between the Company and the Union under which three employees on the transfer list were transferred to Mechanic, such employees consisting of two white employees and one black employee. There was no evidence that the settlement was anything other than a fair resolution of the matter.

18. No one with less seniority than Mr. Howard has been transferred to Maintenance Mechanic.

19. The EEOC charge on which Mr. Howard has sued was filed on April 23, 1983. Such charge was attached to the complaint and was specified by plaintiff Howard through his counsel as the charge on which he is suing.

20. Such charge on April 23, 1983 was filed more than 180 days following the hiring of Lolley, Phillips and Parrish. The charge makes no reference to these hires.

21. Mr. Howard has not identified any act of alleged discrimination occurring within the period of 180 days preceding the filing of his EEOC charge.

## C. *Plaintiff Albert Lewis.*

1. Albert Lewis was hired on May 5, 1969, in the Company's Wood Products Division. He subsequently applied for transfer to the Pulp and Paper Division and was transferred in 1982.

2. Such transfer was under a transfer program which the Company and the Union had adopted and which was embodied in an EEOC agreement. Employees who transferred from the Wood Products Division to the Pulp and Paper Division under such procedure brought their seniority with them.

3. On transferring to the Pulp and Paper Division in 1982, Mr. Lewis started in the Labor & Relief Crew, which is the normal starting point for new employees in the Pulp and Paper Division.

4. The Pre-Trial Order provides that he claims he was discriminated against in being paid the "new hire" rate while in the Labor & Relief Crew. At the trial, there was no evidence that the payment of such rate to Mr. Lewis was anything out of the ordinary or anything other than entirely non-discriminatory.

5. Mr. Lewis bid on and was awarded a Utility job in the Power House in the Pulp and Paper Division. He was in the Power House from October 18, 1982 to November 15, 1982.

6. The Pre-Trial Order provides that he claims he was discriminated against in not being given sufficient training in the Utility job in the Power House. The evidence failed to give rise to any inference that any white employee received any more training.

7. At the time Lewis last worked, he was assigned to the Utility Relief job for the Paper Machine, Shipping, and Finishing areas. The job required that he be able to push large rolls of paper.

8. Mr. Lewis had started on such Utility Relief job on January 19, 1983. He thereafter was at and off from work due to an alleged back condition, as follows:

— January 21, 1983 to May 23, 1983: Off from work.

— June 11, 1983 to August 15, 1983: Off from work.

— August 22, 1983 to September 6, 1983: Off from work.

— September 12, 1983: Last day at work.

9. On September 12, 1983, a meeting was held at which Lewis, with Union representation, advised the Company that he had been released to work without restriction but that he was of the opinion that he could not perform the job. Mr. Lewis specifically stated that he could not push the rolls of paper. Such date of September 12, 1983 was Mr. Lewis' last day at work.

10. Dr. Henry C. Mostellar of Mobile notified MacMillan on September 26, 1983 that "Mr. Lewis came in today and wanted me to extend his sick leave for six months which I can not in good conscience do."

11. On June 4, 1984, Mr. Lewis was recorded as being terminated due to having been off work without leave or notice.

12. It is Mr. Lewis' position that at all times since 1983, he has been permanently disabled from working any job that would involve picking up anything other than a wastebasket.

13. None of the other claims set forth in the Pre-Trial Order was the subject of any evidence.

14. The EEOC charge on which Mr. Lewis has sued was filed on April 26, 1983.

He did not file an EEOC charge concerning his discharge.

## CONCLUSIONS OF LAW

A. *General.*

1. The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 2000e–6 and 28 U.S.C. §§ 1331 and 1343.

2. At the close of the plaintiffs' cases, the defendant moved for dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. The role of the Court in resolving a Rule 41(b) motion in a non-jury case is as follows:

> The trial judge, in passing on a rule 41(b) motion in a case tried to the court, may weigh and consider the evidence and sustain defendant's motion even though plaintiff's evidence establishes a prima facie case that would preclude a directed verdict for defendant in a jury case.

*Sterns v. Beckman Instruments, Inc.,* 737 F.2d 1565, 1568 (Fed.Cir.1984).

3. In order to prevail in this case, the plaintiffs must satisfy the burden articulated in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), of "persuading the trier of fact that the defendant intentionally discriminated against the plaintiff". The allocation and order of evidentiary proof in a Title VII case was outlined by the Supreme Court in *Burdine* as follows:

> In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection". *Id.* at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must

then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

4. To establish a prima facie case sufficient to withstand a Rule 41(b) motion in a Title VII lawsuit, the plaintiff must present (1) direct evidence of discriminatory intent, *Bell v. Birmingham Linen Service,* 715 F.2d 1552 (11th Cir.1983), or (2) evidence sufficient to create an inference that it is more likely than not that the challenged employment practice was attributable to discriminatory intent. *United States Postal Service v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). As stated in *Eastland v. Tennessee Valley Authority,* 704 F.2d 613 (11th Cir.1983), "In a disparate treatment case proof of discriminatory motive or intent is essential."

5. The Court is satisfied that both of the plaintiffs have failed to establish a prima facie case. Neither plaintiff produced any direct evidence of discriminatory intent and neither plaintiff produced evidence sufficient to create an inference that it is more likely than not that the challenged actions were attributable to discriminatory intent.

B. *Robert Howard.*

1. Plaintiff Robert Howard makes two claims. First, he claims that the Company discriminated against him in 1973 in not hiring him as a Maintenance Mechanic. Second, he claims that the Company discriminated against him in 1981 and 1982 when it hired Mechanics from outside the Company and did not transfer him to Maintenance. He points primarily to the hiring of Joe Lolley as a B Mechanic in April 1981, but also points to the hiring of Clifton Phillips and Earl Parrish as A Mechanics in 1981 and 1982.

2. The claim relating to Mr. Howard's hiring in 1973 is not properly before this Court. Such claim was settled by a Pre-Determination Settlement Agreement in 1977, under which Mr. Howard received $4,000 and the Company's agreement to

transfer Howard, in accordance with his seniority, to the Utility A Maintenance job, which was at that time the entry level job in the Maintenance line of progression. Accordingly, Mr. Howard did not obtain a Notice of Right-to-Sue. Any claim under Section 1981 concerning Howard's hiring in 1973, ten years prior to the filing of this suit, is barred by the statute of limitations.

■ 3. Even if the merits of Mr. Howard's hiring claim were before the Court, the Court concludes that he failed to establish a prima facie case. There is no proof by Mr. Howard that any person was hired as a Mechanic at the time he was hired, nor is there any proof by Mr. Howard that he was qualified for hiring as a Mechanic. He did testify that he had completed a two-year trade school course in automobile mechanics and had experience of "less than a year" as an automobile mechanic. There is no showing by Mr. Howard, however, that the Company had any need of an automobile mechanic or that such skills qualified him to fill a Mechanic position in the Company's Pulp and Paper Division. He similarly failed to produce any evidence that any white person with similar skills was hired as a Mechanic. There is therefore no evidence sufficient to create an inference that not hiring Mr. Howard as a Mechanic was attributable to a discriminatory intent.

■ 4. With respect to Mr. Howard's Title VII claim concerning the hiring of Joe Lolley, Clifton Phillips, and Earl Parrish, the Court concludes that such claim is similarly barred by Howard's failure to file an EEOC charge within 180 days of the last of those hires in August 1982. The EEOC charge on which this lawsuit is based was not filed until April 1983. It was therefore untimely.

■ 5. Howard argues that he should be permitted to litigate his Title VII claim under the continuing violation theory. The Court does not agree. None of the alleged discriminatory hires occurred within the 180 day time period preceding the filing of Howard's EEOC charge. His claim is therefore untimely and cannot be resurrected by the bare allegation of "continuing violation". *See Dumas v. Town of*

*Mount Vernon,* 612 F.2d 974, 977 (5th Cir. 1980) ("It is incumbent for the Court in a pretrial determination of the existence of jurisdiction to 'analyze the specific claims of continuous discrimination to make sure that true continuous discrimination charges have been alleged.' "). As the Supreme Court made clear in *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *United Air Lines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), an allegation of a continuing violation requires that there be in fact a *present violation* during the applicable 180-day time period. It is insufficient to merely demonstrate that the effects of earlier decisions continued into the 180-day time period preceding the filing of the EEOC charge. In this case, each of the three hires that Mr. Howard identifies as discriminatory occurred outside the 180-day period, and the fact that the effects of those hires may have continued into the 180-day period is insufficient to transform the alleged discriminatory acts into continuing violations.

■ 6. On the merits, the Court concludes that Mr. Howard failed to establish a prima facie case on the claim. The evidence is that Mr. Howard was No. 12 on the list of persons eligible for transfer to Mechanic and that, with a single exception, all of the persons ahead of him on the list, including the person at the top of the list, were white. Accordingly, the Company's action in hiring Joe Lolley affected all of the employees on the list, black and white, in a similar manner. Indeed, this was exactly Mr. Howard's testimony. The only difference is that with his seniority placing him at No. 12 on the list, there were 11 employees with more seniority who were more affected than he was, and 10 of such 11 employees are white.

7. The same is true with respect to the hiring of Clifton Phillips and Earl Parrish. To the extent that those hires affected Howard, they affected similarly-situated white employees on the transfer list in the same manner.

8. Having thus failed to establish that he was treated any differently from similarly-situated white employees, the plaintiff failed to establish a prima facie case:

Plaintiff has failed to establish a prima facie disparate treatment case because: a) There was insufficient evidence to show that plaintiff was treated less favorably than similarly situated non-minority employees. Indeed an exhaustive review of the record fails to show that plaintiff was treated any differently from similarly situated employees, let alone the kinds of differences that would establish this element of plaintiff's prima facie case.

*Tillery v. Pacific Telephone Co.,* 34 FEP 54, 59 (N.D.Cal.1982).

■ 9. Mr. Howard failed to make a prima facie case for the additional reason that there was no showing by him that he possessed the minimum qualifications for the B Mechanic position into which Joe Lolley was hired. There was equally no showing that Mr. Howard possessed the minimum qualifications for the A Mechanic job into which Clifton Phillips and Earl Parrish were hired. Moreover, the Court notes that the qualifications of Lolley, Phillips, and Parrish appear to be substantially more extensive than do the qualifications possessed by Mr. Howard. The evidence produced was that Joe Lolley had 7 or 8 years of experience in Electronics. Similarly, Clifton Phillips had approximately 6 years of experience as a mechanic, millwright, and welder, and Earl Parrish had three years of pipefitting experience.

10. The Court concludes that Mr. Howard produced insufficient evidence to permit an inference that the Company's hiring of Lolley, Phillips, and Parrish while not transferring Mr. Howard to Maintenance, was in any way attributable to racial discrimination.

## C. *Albert Lewis.*

1. Albert Lewis also makes two complaints. He first contends that the Company discriminatorily failed to assign him to light duty following his return to work on September 6, 1983. Second, Mr. Lewis contends that his discharge in June of 1984 for being off work without leave since September 12, 1983 was attributable to racial discrimination.

■ 2. At the outset, it is undisputed that Mr. Lewis did not file an EEOC charge directed to these claims, and his Title VII claims are therefore barred.

■ 3. On the merits, the Court is satisfied that Mr. Lewis failed to establish a prima facie case with respect to either of his two contentions. First, there is no evidence that any employee was given any light duty. Mr. Lewis' testimony was that he was told by the Company that there was no light duty. He did testify that an employee in the Wood Products Division, Clarence Newton, was off work for approximately one year for medical reasons and thereafter returned to his job. It was Mr. Lewis' further testimony that he did not know what work Newton performed when he returned. Accordingly, there is no evidence that Mr. Newton, or any other employee, was ever given any light duty work. In the absence of any evidence of disparate treatment with respect to assignment of light duty, Mr. Lewis failed to establish a prima facie case.

4. On the discharge claim, Mr. Lewis' only evidence is that he was discharged. There is no evidence that any similarly situated white employee was treated any differently. Although Mr. Lewis testified that Clarence Newton returned to work, there was no testimony concerning the circumstances of his being off work. There is, for example, no evidence that he was off from work without a medical leave. In this regard, it is to be noted that Mr. Lewis was off from work and returned to work on three occasions in the year 1983 before September 12, 1983. It obviously could not be argued that Mr. Lewis was not allowed to be off from work when he had a medical leave.

5. There was not sufficient evidence to permit even an inference that the discharge was attributable to any race discrimination, and Mr. Lewis thus failed to establish a prima facie case on the discharge claim.

A separate Final Judgment will be entered.

## CONCLUSION

Based upon the above Findings of Fact and Conclusions of Law, taking into consideration the record as a whole, the Court concludes that plaintiff Albert Lewis has not proved that his discharge was attributable to any race discrimination and that plaintiff Robert Howard has not proved that his denial of a transfer to the position of maintenance mechanic was attributable to racial discrimination. Judgment is due to be entered by separate document in favor of defendant on all claims, with costs taxed to plaintiffs.