Homer HAIR, Plaintiff,

v.

**HELENA CHEMICAL COMPANY, Defendant.**

Civ. No. H–C–87–95.

United States District Court,
E.D. Arkansas, E.D.

March 22, 1990.

Glenn E. Kelley, Little Rock, Ark., for plaintiff.

Bruce Lindsey, Wright, Lindsey and Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

Plaintiff, Homer Hair, is a black male and a resident of Milwaukee, Wisconsin. Helena Chemical Company (the "Company") is a national company, headquartered in Memphis, Tennessee, and it has a facility located in West Helena, Arkansas where it formulates, blends and packages agricultural pesticides and other chemical products. During the time of plaintiff's employment, the West Helena facility was divided into the following departments: traffic, mills, liquids, quality control, grounds, construction and maintenance. The

management of each department is generally delegated down the following chain of command: general foremen, line foremen, crew leaders and laborers.

Mr. Hair was initially employed in the mills department as a laborer by the Company on August 13, 1980. He was laid off on September 17, 1980 because of lack of work. He was rehired as a laborer in the mills department on April 14, 1981. On October 14, 1981, plaintiff was transferred to the Hazardous Waste Unit in the Grounds Department. This unit normally consists of a small group of employees, around five, and work of the unit is directed by a crew leader. During this time, plaintiff was considered a temporary employee, but on February 5, 1982, he was transferred to permanent status. Throughout plaintiff's employment, the department manager of the Grounds Department was Joe Gibbs.

When plaintiff first entered the Grounds Department, he took orders from McKinzey Barrett, who was the crew leader at that time. Plaintiff was promoted to crew leader on July 1, 1983. He held that position until July 30, 1986, when he resigned.

On November 12, 1986, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), contending that he had been discriminated against on the basis of his race. On August 31, 1987, the EEOC issued its Determination, finding that "the evidence obtained during the investigation does not establish a violation of the statute." Plaintiff requested that the Determination be reviewed, and on September 29, 1987, the EEOC issued its Determination on Review and Dismissal of Title VII Charge agreeing with the field office's determination and dismissing plaintiff's charge.

In this lawsuit, plaintiff alleges that Helena Chemical Company discriminated against him on the basis of race with respect to compensation and promotions and that those factors forced him to resign, constituting constructive discharge.

■ The Court will first discuss the crew leader classification. The basis of plaintiff's complaint is that as crew leader he had difficulty getting the employees in his unit to follow his directions and that defendant refused to rectify the situation by upgrading his position to line foreman. Plaintiff contends that on several occasions, he requested of Joe Gibbs and Larry Wilhite, defendant's personnel director, that he be promoted to the position of line foreman in his unit in order to eliminate any questions as to his authority and thereby obtain more cooperation from his laborers. Larry Wilhite testified that Helena Chemical Company did not believe the Hazardous Waste Unit justified a line foreman position because of the size and function of the unit and the proximity of the department manager to oversee the work. The testimony indicated that there has never been a line foreman over the Hazardous Waste Unit.[1]

The evidence is uncontroverted that on occasions when plaintiff complained to the department manager about the other employees in the unit, the department manager would instruct those employees that they were to take their directions from the plaintiff.[2] The classification and authority of Mr. Hair were the same as the classification and authority of Mr. Webster and Mr. Whaley. Mr. Whaley, one of the white crew leaders, was also hired on a temporary basis, and worked for approximately 2½ years before being promoted to crew leader. The evidence established that on at least one occasion, Mr. Whaley also experienced difficulty in getting other employees to follow his directions and that he also complained to his manager or general su-

1. At the time of plaintiff's resignation, only three employees held the position of crew leader; plaintiff, George Webster (white) and Jerry Whaley (white). A fourth employee, Maurice White, was classified as a crew leader for pay purposes because he had previously held that position. At the time of plaintiff's resignation, however, White was not functioning as a crew leader.

2. Leotis Banks, one of plaintiff's witnesses and a member of the Hazardous Waste crew, testified that several employees in the unit complained to Joe Gibbs, the department manager, about plaintiff's tendency to stand around and tell others what to do while refusing to do any of the work himself.

pervisor about the situation. Defendant did not upgrade Mr. Whaley's position either. Therefore, white employees in similar circumstances received the same treatment as plaintiff. Plaintiff failed to present any evidence that Helena Chemical Company's decision not to upgrade or reclassify his position was in any way influenced by the fact that plaintiff is black. The Court will not require an employer to create a position so that it may be filled by a minority unless it has been proven that the failure to create such a position was discriminatorily motivated. That simply has not been proven in this case.

The plaintiff also claimed that he was denied various promotions to line foreman because of his race. Specifically, plaintiff complains about the promotion of Danny Holt to foreman in the Special Products Department in September, 1983; the promotion of Robert Drennon to foreman in the Liquid Department in April, 1984; and the promotion of David Rawlings to foreman in the Receiving Department in July, 1985.

■ To establish a *prima facie* case of discrimination with respect to failure to promote, the plaintiff must prove that he belonged to a protected class, applied for a job for which he was qualified, but was rejected under circumstances which allow the Court to infer unlawful discrimination. *Briggs v. Anderson*, 796 F.2d 1009, 1023 (8th Cir.1986); *Jones v. International Paper Co.*, 720 F.2d 496, 500 (8th Cir.1983). Larry Wilhite testified that plaintiff never asked specifically to become supervisor, and that if a person is supervisory material he felt that that person ought to be able to make a specific request.

Defendant contends that none of the plaintiff's promotion claims occurred within 180 days of his EEOC charge and are therefore time barred. Defendant further argues that the continuing violation theory asserted by the plaintiff cannot be used to resurrect discrete acts of alleged discrimination which occurred more than 180 days prior to the filing of an EEOC charge, citing *Less v. Nestle Co.*, 705 F.Supp. 110 (W.D.N.Y.1988); *Lewis v. MacMillan–Bloedel, Inc.*, 670 F.Supp. 330 (S.D.Ala.

1986); and *Hill v. AT & T Technologies, Inc.*, 731 F.2d 175 (4th Cir.1984).

The plaintiff relies on the decision in *Satz v. ITT Financial Corp.*, 619 F.2d 738 (8th Cir.1980) for the proposition that where discrimination is not limited to an isolated instance but pervades a series or pattern of events which continue to within 180 days of the filing of the charge with the EEOC, the filing is timely regardless of when the first discriminatory incident occurred. *Satz*, 619 F.2d at 743. This "continuing violation" theory permits courts to consider alleged discriminatory acts occurring prior to the 180 day statute of limitations period for Title VII actions if the acts were part of a "continuing pattern" of discrimination. *Gardner v. Morris*, 752 F.2d 1271 (8th Cir.1985). The Court in *Gardner* noted:

> Typically the "continuing violation" theory is advanced in cases where a plaintiff failed to seek administrative review for allegedly discriminatory acts that *preceded* acts for which administrative review was sought. (citations omitted.)

*Id.* at 1279.

Plaintiff contends that although the certain promotions may have occurred outside the 180 days prior to the filing of the complaint with the EEOC, the policies and practices continued up to the date plaintiff was allegedly constructively discharged from the company. Plaintiff states that the Company refused to assist Mr. Hair in obtaining cooperation from his crew within the 180–day period prior to filing a complaint with the EEOC, as Mr. Hair requested, but was denied promotions, transfers or a demotion within that period. The Court will consider the evidence relating to promotions which occurred outside the 180 days prior to the filing of the EEOC company under the "continuing violations" theory.

■ Danny Holt was promoted to line foreman in the Special Products Department. Prior to his promotion he had been a laborer, a formulator, and a crew leader in the Special Products Department. Mr. Hair had never been assigned to that department. Mr. Holt told a superior that he

would like to train for a foreman's position, and after training, was promoted to foreman. The Court finds that Mr. Holt's prior experience in the Special Products Department was a legitimate, non-discriminatory reason for his selection over the plaintiff and the plaintiff has failed to show that the reason was pretextual.

■ Robert Drennon was selected as line foreman in the Liquid Department in April, 1984. He responded to a January, 1984 notice which was posted. The notice provided that one of the requirements for the position was familiarity with machinery involved with filling and packaging operations on production lines in Liquid and Milling area. Mr. Drennon had been employed in the Maintenance Department since January 29, 1982. In that department, he was responsible for maintaining the machines all over the plant. When he was promoted to line foreman, he had more than one year's experience with the production lines in the Liquid and Milling Department. On the other hand, Mr. Hair's familiarity with the machinery in the Liquid and Milling Areas was limited to less than six months as a line worker prior to October, 1981. Mr. Drennon's prior experience in the Liquid and Milling Department was a legitimate, non-discriminatory reason for his selection over the plaintiff and the plaintiff has failed to show that the reason was pretextual.

■ David Rawlings was promoted to foreman in the Receiving Department in July, 1985. He had been employed by the defendant since August of 1980. Prior to his transfer to the Receiving Department, Mr. Rawlings had worked as a Lab Technician where he was responsible for conducting tests on the chemicals used in the formulation of agricultural pesticides. Mr. Rawlings' knowledge of the various chemicals was considered important by Roger Patterson, who had been Mr. Rawlings' department manager and who made the foreman selection, because the Receiving Department foreman is responsible for keeping records on the chemicals that are received at the facility. The Court finds that the defendant has established legitimate, non-discriminatory reasons for the selection of David Rawlings as Receiving Department foreman and the plaintiff has failed to show that the reasons were pretextual.

Plaintiff contends that the evidence of statistical disparities presented by Mr. Hair's expert witness, Dr. Berry, together with the discriminatory treatment and subjective decision making by the all-white management demonstrates the pretext of the Company's explanation of its promotions. However, the Court finds Dr. Berry's testimony to be incredible, as will be discussed later. Furthermore, although the Court has serious concerns about the subjective decision making by the Company and the lack of adequate record-keeping, the Court finds that the plaintiff failed to demonstrate the pretext of the Company's explanations of its promotions. The documents support the defendant's explanations.

■ Plaintiff contends that several white employees with less experience received higher pay than plaintiff. As stated earlier, at the time of plaintiff's resignation, plaintiff was one of four employees classified as a crew leader for pay purposes. The other three were George Webster, white; Maurice White, black; and Jerry Whaley, white. Plaintiff's rate of pay was as high or higher than all except Mr. Webster's. On 5/5/86, when Mr. Whaley was promoted to crew leader in the Lye Department, he was making $5.45 per hour. Mr. Webster was a crew leader in the construction/maintenance unit. The evidence is uncontroverted that employees in the construction/maintenance classification make more than employees in the laborer classification. This is because of the skill and ability required to perform construction and maintenance jobs. Larry Wilhite, the personnel manager, testified that since a crew leader is responsible for directing the work of the other members of the crew, his pay is set at least 10 to 20 cents above the highest paid employee in that unit. He also testified that this is a common practice in the industry.

In 1986, employees in the construction/maintenance classification made between $5.35 and $5.60 an hour. In 1986,

employees in the Hazardous Waste unit made between $4.20 and $4.70 an hour. Until September 27, 1986, when his salary was increased to $6.10 an hour, Mr. Webster's rate of pay as a construction/maintenance crew leader was $5.70 an hour, or ten cents more than the highest paid employee in that classification, while Mr. Hair's rate of pay as a Hazardous Waste crew leader was $5.55 an hour from September 27, 1985 to the date of his resignation on August 1, 1986, or 85 cents above the highest paid employee in that classification. On August 25, 1986, Maurice White was making $5.55 per hour. Assuming arguendo that plaintiff made a *prima facie* case of discrimination with respect to compensation, defendant has articulated a legitimate non-discriminatory reason for the difference in Mr. Webster's and Mr. Hair's rates of pay and plaintiff has failed to show that the reason given was pretextual.

■ Plaintiff also asserts a disparate impact theory. He contends that the evidence establishes the intolerability of the working conditions at the Company and the Company's intent to force plaintiff to quit. It is further contended that the record is replete with instances where white employees were treated better than plaintiff thereby demonstrating the Company's intent. He relies on the testimony of his expert witness to support this position. Plaintiff alleges that before blacks are promoted to the position of line foreman, the Company requires a substantially longer period of employment than it does for its white employees. Plaintiff states that certain black employees were employed by the Company as long as 252 months before being promoted to the position of line foreman. Based upon the plaintiff's expert witness testimony, he asserts that the arithmetic mean of the elapsed period of time from the date of hire to promotion of white employees is approximately 36.75 months, whereas it is 79.13 months for blacks. However, the Court finds the testimony of plaintiff's expert to be totally unreliable and lacking in probative value.

The Court's initial concerns about the reliability of the expert was confirmed after hearing Dr. Berry's testimony in total. The Court concludes that his analysis and conclusions were based upon incomplete and inaccurate information and are therefore lacking in probative value. First, plaintiff's statistical evidence is unreliable because of the small sample size. Plaintiff's analysis was based on a comparison of the length of service of four white foremen with a length of service of fifteen black foremen. This small size detracts from the value of the evidence and is too small to give rise to any statistically reliable references. *See Eubanks v. Pickens–Bond Construction Co.*, 635 F.2d 1341 (8th Cir.1980) (the promotion of only four cement finishers to foremen may constitute too small a sample size to establish a prima facie finding of discrimination through statistical analysis). Next, the Eighth Circuit in *Eubanks* indicated that tests of significance require some assurance of homogeneity among the candidates in the pool from which the selections occurred. Dr. Berry conceded that his analysis did not take into consideration the length of service of the employees holding the supervisory positions prior to the current occupants. Dr. Berry conceded these factors might be important in light of the testimony that it was defendant's preference to promote from within the department if possible. Furthermore, Dr. Berry did not take into consideration the pool of people who held positions below foreman. His analysis therefore disregards whether there might have been a white individual who had been in his position for 100 months and a black who had been in his position for 30 months and the black was promoted. Dr. Berry only considered the data of those individuals who were selected as foremen.[3] Finally, the testimony indicated that some of the data used for plaintiff's analysis may have been incorrect in that there were apparently some discrepancies involving the promotion dates of some of the supervisors. In plaintiff's analysis the promotion date used for S.B. Mitchell, a black supervisor,

---

**3.** Because of this Court's holding that defendant did not discriminate against the plaintiff, it is not necessary to discuss damages. However, the Court notes that Dr. Berry's testimony re-

garding damages was also deficient since he failed to consider income plaintiff received after he resigned from defendant company.

was November 23, 1981. The defendant presented a document which reflected a new rate of pay for Mr. Mitchell as supervisor, effective December 4, 1971. Plaintiff used a promotion date of November 30, 1979 for Ulysses W. Whitlock, another black supervisor. The wage information sheet of Mr. Whitlock reflects that on August 11, 1974 Mr. Whitlock was supervisor. Plaintiff used a promotion date of March 30, 1984 for Forrest Taylor. However, defendant presented a payroll information sheet reflecting a "Rate increase to base rate—foreman classification—effective 3/4/83."

With respect to the plaintiff's constructive discharge claim, since the Court has found that plaintiff has failed to prove his claims of discrimination, plaintiff has not established the underlying illegality necessary to support a constructive discharge claim. *Barrett v. Omaha National Bank*, 726 F.2d 424, 428 (8th Cir.1984). Even if the Court held otherwise regarding a finding of discrimination, the constructive discharge claim would fail. A plaintiff alleging constructive discharge must prove that the employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job. *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981). The most compelling evidence in support of the fact that plaintiff was not constructively discharged is that Mr. Hair resigned his employment at Helena Chemical Company to join Helen Jackson, with whom he was living, and his son, Homer Hair, Jr., in Milwaukee, Wisconsin. A document admitted into evidence shows that as early as July 9, 1986, Ms. Jackson submitted a change of address to the County Clerk of Phillips County. The document reflects that her AFDC case was to be closed because she was moving to 3008 W. Guneau in Milwaukee, Wisconsin 53108. This same address is the address shown as plaintiff's address on the documents he received from the Arkansas Employment Security Division, the Arkansas Appeal Tribunal Decision of Appeals Referee, and the Decision of the State of Arkansas Board of Review. Mr. Hair resigned his employment with defendant on July 30, 1986, and on August 1, 1986, he moved to Milwaukee to join Ms. Jackson who had preceded him there. On August 8, 1986, Mr. Hair applied for unemployment compensation benefits in Milwaukee. He stated on his application that the reason he quit his employment was to "move out state." At trial, the plaintiff denied this was the reason he left. The Court finds plaintiff's testimony to be incredible, and that plaintiff resigned his employment for personal reasons and not because of anything Helena Chemical Company did or did not do.

Furthermore, as pointed out by the defendant, the plaintiff has failed to establish that his working conditions were intolerable. This is assessed by whether a "reasonable person" in the employee's position would have felt compelled to resign. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986); *Johnson v. Bunny Bread Co.*, *supra*. At most, Mr. Hair has demonstrated that he experienced some frustration because employees in his unit would not always follow his directions. He has not established that his working conditions were such that a reasonable person would have felt compelled to resign. Nor has he established that defendant's actions were taken with the intent of forcing the plaintiff to quit. The evidence is uncontroverted that Mr. Hair was treated no differently than Mr. Whaley and the other crew leaders. This rebuts any inference that defendant's handling of Hair was done with intention of forcing him to resign. *Johnson v. Bunny Bread*, *supra*.

In conclusion, the Court admonishes the defendant for their apparent subjective decision making and sloppy record-keeping. However, the Court finds that the evidence presented did not rise to the level of discrimination, as discussed in detail above. Therefore, the Court hereby finds in favor of the defendant and dismisses plaintiff's complaint.

IT IS SO ORDERED.