Stanley D. STEARNS and James A.
Ramin', Appellants,

v.

BECKMAN INSTRUMENTS,
INC., Appellee.

Appeal No. 83–1415.

United States Court of Appeals,
Federal Circuit.

May 8, 1984.

Donald Gunn, Houston, Tex., submitted for appellants.

Ronald L. Palmer and Martin L. McGregor, Houston, Tex., submitted for appellee.

Robert R. Meads, Fullerton, Cal., of counsel.

Before SMITH, Circuit Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

In this patent infringement case, the court substitutes the following opinion for publication in place of its previous unpublished opinion, without any change in its holding or in the reasoning utilized. Appellants Stearns and Ramin' (Stearns) appeal from a judgment of the United States District Court for the Southern District of Texas, holding U.S. patent No. 4,022,065, issued to Ramin' and Stearns (the Ramin' patent), invalid under 35 U.S.C. §§ 102(b) and 103 (1976). The district court found that the Ramin' patent was not infringed and denied the request of appellee, Beckman Instruments, Inc. (Beckman), for attorney fees under 35 U.S.C. § 285. In view of our holding that the court below did not err in concluding that the invention claimed in the Ramin' patent was "on sale" within the meaning of section 102(b), we affirm in part the judgment of invalidity. We need not resolve whether the alternative section 103 ground for the judgment is in error. Not all claims of the Ramin' patent were in issue in the district court, however, and it is necessary, therefore, to vacate that portion of the judgment of invalidity purporting to reach those claims not in issue. Hence, we affirm in part and vacate in part.

## Background

The Ramin' patent relates to an improvement in high pressure liquid chromatography equipment used for qualitative and quantitative analysis of a liquid chemical sample. Liquid chromatography involves separating the components of a liquid sample by measuring the differences in their rates of absorption by a stationary material from a moving stream of liquid. The invention is a sample injection syringe for introducing small volumes of sample into the chromatograph allowing accurate measurement and delivery of small samples.

The calibrations on the syringe are offset by the connecting volume of sample held in the chromatograph between the syringe outlet and the front end of the sample to be injected. Thus, the syringe automatically overinjects into the valve an amount of sample precisely equal to the dead volume of sample that remains in the valve.

Ramin' was formerly the major shareholder, president, and chief executive officer of Glenco Scientific, Inc. (Glenco). Stearns was and is the controlling shareholder and chief executive officer of Valco Instruments Co., Inc. (Valco). The district court found that, prior to October 29, 1974, Valco was manufacturing and selling, in part through Glenco, a line of high pressure and ultra-high pressure sample injection valves in competition with Beckman. Further, the court found that on October 29, 1974, Stearns of Valco and Ramin' of Glenco discussed, by telephone, making a special syringe sample injection apparatus. As a result of that conversation, Glenco made the first prototype of the invention. The needle of the "first prototype," however, was too slender and, on November 16, 1974, Ramin' ordered the production by Glenco of a "second prototype" having a thicker needle and the claimed offset calibration scale.

The court found that one of these "second prototype" syringes was sent to Dr. Richard Henry of Spectra-Physics for the purpose of inducing Spectra-Physics to purchase the syringe from Glenco. The purpose of that submission was found to be commercial and not experimental.

Ramin' conversed with Dr. Silvestre Tejada of the United States Environmental Protection Agency (EPA) regarding the sample injection syringe and quoted Dr. Tejada a price of $48 for each syringe. Subsequently, two EPA procurement requests were prepared and, on February 4, 1975, Glenco received a telephone order for the syringes from EPA. On February 21, 1975, Glenco shipped to Dr. Tejada two of the "second prototype" syringes which were received on or about February 28, 1975.

On February 11, 1975, Ramin' changed the specifications of the needle and adapter and ordered immediate production of six units of a "third prototype" modified syringe. Seven "third prototype" syringes were completed February 20, 1975, and were in existence when the EPA order was filled.

In March 1975, Stearns and Ramin' attended the "Pittsburgh Conference" at which they demonstrated, and distributed literature describing, their syringe. Several sales were generated by these demonstrations.

Ramin' and Stearns, on February 19, 1976, filed application No. 659,373, the successful prosecution of which resulted in the issuance of the Ramin' patent on May 10, 1977. They then filed suit against Beckman in the United States District Court for the Southern District of Texas alleging infringement of the Ramin' patent. The district court entered summary judgment in favor of Beckman holding the Ramin' patent invalid as "on sale" under section 102(b).[1] The Fifth Circuit reversed the district court's grant of summary judgment.[2]

On remand, the district court once again held the Ramin' patent invalid under section 102(b) and granted Beckman's Fed.R. Civ.P. 41(b) motion. Stearns appeals.

### Issues

Five principal questions are presented by this appeal:

(1) whether the district court erred in adjudicating the validity of all claims of the Ramin' patent where infringement of only claims 8 and 9 was placed in issue by the parties;

(2) whether the trial judge has an obligation under Fed.R.Civ.P.41(b) to weigh the evidence or, rather, whether a rule 41(b) motion is evaluated by the trial court under the directed verdict standard;

(3) whether the district court erred in concluding that the invention claimed in the Ramin' patent was "on sale" within the meaning of 35 U.S.C. § 102(b);

(4) whether the district court erred in concluding that the claims of the Ramin' patent would have been obvious under 35 U.S.C. § 103; and

(5) whether the trial court's failure to find infringement of claims 8 and 9 of the Ramin' patent is clearly erroneous.

### Claims in Issue

The court below held that the Ramin' patent is invalid, yet, only claims 8 and 9 of the Ramin' patent were in issue. Beckman did not seek a declaratory judgment of invalidity of any of the claims of the Ramin' patent.[3] Consequently, when appellants Stearns and Ramin' amended their complaint prior to trial to charge infringement of only claims 8 and 9, claims 1–7 and 10 were removed from consideration. While the pretrial stipulation may direct the evidence to be offered, it is ineffective to grant to the district court the power to decide an issue not properly before it for decision. Thus, the judgment of invalidity of claims 1–7 and 10 of the Ramin' patent is vacated.[4] Preservation of claims 1–7 and 10 under 35 U.S.C. § 282 (1976) raises no implication regarding the validity or invalidity of those claims.

### Standard of Proof Under Fed.R.Civ.P. 41(b)

Judgment was entered against Stearns under Fed.R.Civ.P. 41(b). A judgment under that rule need not be entered in accordance with a directed verdict stan-

**1.** *Stearns v. Beckman Instruments, Inc.,* 505 F.Supp. 1035, 213 USPQ 575 (S.D.Tex.1981).

**2.** *Stearns v. Beckman Instruments, Inc.,* 669 F.2d 1095, 217 USPQ 367 (5th Cir.1982).

**3.** *Felburn v. New York Cent. R.R.,* 350 F.2d 416, 420, 146 USPQ 622, 626 (6th Cir.1965), *cert. denied,* 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852, 148 USPQ 771 (1966) (it was error to pass upon the validity of claims which were not properly put in issue).

**4.** *Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542, 1552, 220 USPQ 193, 201–02 (Fed.Cir. 1983); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1582, 220 USPQ 97, 110–11 (Fed.Cir.1983).

dard, notwithstanding the pleasant symmetry with jury practice of Stearns' argument to the contrary. Rather, the trial judge in deciding such a motion in a nonjury case may pass on conflicts of evidence and credibility.[5]

Prior to the 1946 amendment of Fed.R. Civ.P. 41(b), the Third and Fourth Circuits held that the function of the court in resolving a rule 41(b) motion in a nonjury case was the same as in a motion for a directed verdict[6] on the theory that a rule 41(b) motion raised a question of law only. The 1946 amendment to rule 41(b), however, rejected that approach and eliminated any doubt that the role of the court is quite different from its role in passing on a motion for a directed verdict. The trial judge, in passing on a rule 41(b) motion in a case tried to the court, may weigh and consider the evidence and sustain defendant's motion even though plaintiff's evidence establishes a prima facie case that would preclude a directed verdict for defendant in a jury case.[7]

▆ The district court applied the correct standard, entered appropriate findings of fact, and properly entered judgment on the merits under rule 41(b). Even assuming Stearns had established a prima facie case on the merits, that would not preclude entry of judgment under Fed.R.Civ.P. 41(b). The district court must look also to the evidence elicited contrary to plaintiff's position, evaluate and resolve conflicts in the evidence, and either enter an appropriate judgment against the plaintiff or decline to render any judgment until the close of all the evidence.[8]

### Law of the Case

▆ Relying on the opinion of the Fifth Circuit reversing the trial court's ear-lier grant of summary judgment in this case, Stearns contends that the law of the case doctrine precluded the district court from finding the Ramin' patent invalid as "on sale" under section 102(b). Stearns misreads the Fifth Circuit's prior opinion. The Fifth Circuit held that there remained a genuine issue of material fact precluding summary judgment as to whether the device on sale prior to the critical date was a reduction to practice of the claimed invention. The Fifth Circuit did decide an issue of claim construction as a matter of law and that construction was binding on the district court as law of the case. It did not, however, determine that the claimed invention was not on sale under section 102(b). The law of the case doctrine is not applicable to issues neither presented nor decided in a former proceeding in the case.[9] The district court was not precluded by the law of the case doctrine from concluding on remand that the Ramin' patent is invalid under section 102(b) as "on sale" more than 1 year prior to the date of the application for the Ramin' patent. We conclude, on the basis of the record before us, that the district court did not err in determining that issue on the basis of the evidence presented at trial.

### "On Sale" Bar

▆ The district court evaluated the conflicting testimony and evidence and found that the claimed invention was reduced to practice in December 1974 by virtue of the "second prototype." Further, it found that the problems associated with the "second prototype" would not affect its suitability for quantitative analysis. Thus, the district court construed the claims in accord-

---

**5.** *Bach v. Friden Calculating Mach. Co.,* 148 F.2d 407 (6th Cir.1945); *Gary Theatre Co. v. Columbia Pictures Corp.,* 120 F.2d 891 (7th Cir.1941); *Young v. United States,* 111 F.2d 823 (9th Cir. 1940); 5 J. MOORE, J. LUCAS, J. WICKER, MOORE'S FEDERAL PRACTICE ¶¶ 41.01[7], 41.13[4] (2d ed. 1982).

**6.** 5 MOORE'S FEDERAL PRACTICE ¶ 41.13[4]; *Schad v. Twentieth Century-Fox Film Corp.,* 136

F.2d 991 (3d Cir.1943); *Whitley v. Powell,* 159 F.2d 625 (4th Cir.1946).

**7.** 5 MOORE'S FEDERAL PRACTICE ¶ 41.13[7].

**8.** *Weissinger v. United States,* 423 F.2d 795 (5th Cir.1970) (en banc).

**9.** 1B J. MOORE, J. LUCAS, T. CURRIER, MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (2d ed. 1983).

ance with the Fifth Circuit's construction of the claims. We hold that the district court's conclusion—that the subject matter claimed in claims 8 and 9 of the Ramin' patent was reduced to practice and "on sale" prior to the February 19, 1975, critical date—is not erroneous.

Although we have some problems with the reasoning of the court below in its approach to the issue of validity under section 103, we need not, and do not, reach either that issue or the issue of infringement, in view of our affirmance of the district court's holding of invalidity under section 102(b).

### Costs on Appeal

We turn now to Beckman's request for expenses resulting from this appeal. Beckman contends that Stearns' appeal is frivolous. We disagree. Stearns has prevailed on the argument that claims 1–7 and 10 were not before the trial court for decision. Further, Stearns' argument that Fed.R.Civ.P. 41(b) motions should be assessed under the directed verdict standard, although contrary to the clear weight of authority, is reasonable, was made in good faith, and is not frivolous. Beckman's application for the expenses of this appeal is denied.

AFFIRMED IN PART, VACATED IN PART.