I agree with the result suggested by the majority, but consider it unnecessary to decide whether the "appearance of impropriety," alone, is adequate ground to disqualify a successful bidder. The facts of this case establish both a possible conflict of interest *and* an unusual pattern in bidding. These, together, provide a rational basis for the contracting officer's decision.

DIGITAL EQUIPMENT
CORPORATION,
Appellee,

v.

EMULEX CORPORATION, Appellant.

Appeal No. 86–1357.

United States Court of Appeals,
Federal Circuit.

Nov. 12, 1986.

Herbert F. Schwartz, Fish and Neave, New York City, argued, for appellant; with him on the brief, were Kenneth B. Herman and Thomas L. Secrest, of counsel. Also on the brief, was Evan Finkel, Spensley Horn Jubas & Lubitz, of Los Angeles, Cal., of counsel.

Martin J. O'Donnell, Cesari and McKenna, Boston, Mass., argued, for appellee; with him on the brief, were Stephen Y. Chow, James W. Jandacek, Patricia A. Sheehan and Robert A. Cesari. Also on the brief, was Richard N. Alpert, Digital Equipment Corp., Maynard, Mass.

Before FRIEDMAN, BALDWIN, and NIES, Circuit Judges.

NIES, Circuit Judge.

Emulex Corporation, defendant in a patent infringement/trade secrets suit before the United States District Court for the District of New Hampshire appeals from a preliminary injunction entered on April 1, 1986. This court has jurisdiction under 28 U.S.C. § 1292(c)(1) (1982). On August 5, 1986, this court granted Emulex's request for a stay of paragraph 2 of the injunctive order. An expedited hearing was held on October 9, 1986. We now vacate paragraph 2 of the injunction because of the district court's failure to hold a hearing, make findings of fact, and provide a statement of reasons as mandated by Rules 52 and 65 of the Federal Rules of Civil Procedure.

I

In the case under appeal Digital has charged Emulex, *inter alia*, with misappropriation of trade secrets. It is undisputed that a former employee of Digital, Charles Hess, was hired by Emulex and that Hess brought certain Digital materials with him which were entered into Emulex's computer data base.

In July, 1985, Digital added a misappropriation count to a pending patent suit against Emulex upon learning from Emulex that Emulex had received these Digital materials. Emulex denies that it misappropriated Digital's materials and asserts that it has purged itself of all the appropriated materials, that it fired Hess and another employee after discovery of the incident, and that it informed Digital of what happened. Digital maintains that Emulex acted in concert with Hess. In December, 1985, Digital moved for a preliminary injunction directed to the misappropriation charge. Without holding a hearing, on April 1, 1986, the district court entered the injunction Digital had proposed without modification. The injunctive order reads in its entirety as follows:

PRELIMINARY INJUNCTION

Having considered the arguments of Plaintiff in support of its Motion For Preliminary Injunction, and the counterarguments of Defendant thereto, it is ordered as follows:

The Defendant Emulex Corporation, and its subsidiaries, and all their officers, agents, employees and all those acting in concert with it are hereby preliminarily enjoined, until the final disposition of this case, from:

1. Further using and disclosing, either outside Emulex or to any Emulex employee, any of Digital's information contained in a) the files in the HESS. SPECS subdirectory, as set forth in Exhibit A attached hereto, b) the Digital documents Charles Hess took to Emulex which were returned to Digital, as set forth in Exhibit B attached hereto, c) the Digital documents Charles Hess took to Emulex which were destroyed, d) the specifications and microcode for Digital's HSC50 product, and e) the schematics for Digital's QDA50 or KDA50 product;

2. Designing, developing, manufacturing, marketing or selling any product that implements, or is designed to connect with any Digital product that

implements, any portion of any of the protocols specified in Digital's DSA technology, specifically Digital's MSCP and UQSSP (except for portions of such protocols that are specifically disclosed in the UDA50 Programmer's Kit and in U.S. Patent 4,449,182), TMSCP, SDI, DSDF, SCA, or the BI specifications, or specifications or microcode for Digital's HSC50, QDA50 or KDA50 products, unless the development and testing of the Emulex product was wholly completed, without any further modification, prior to June 21, 1985;

3. Employing or using Charles Hess in any capacity on the design, development, modification, manufacture, marketing or sale of any Digital-compatible product;

4. Failing or refusing to return to Digital all documentation, computer tape, or any other material in whatever form, containing any Digital information obtained from non-public sources.

On August 5, 1986, this court entered a stay on the following basis:

Paragraph 2 of the district court's preliminary injunction of April 1, 1986 is stayed pending disposition of this appeal

with the understanding, during the term of the stay, that the remainder of the injunction does not preclude Emulex from using properly acquired information or material (*i.e.*, that which is or becomes through no fault of Emulex publicly available or which Emulex derives legitimately by *e.g.*, reverse engineering or technical analysis of publicly available products (without the aid of Digital confidential information)).

## II

The procedural requirements for the grant of a preliminary injunction set forth in Rule 65 of the Federal Rules of Civil Procedure [1] require notice, a statement of reasons for an injunctive order and the posting of security. Further Rule 52(a) [2] requires that a preliminary injunction be supported by findings of fact. *Mayo v. Lakeland Highlands Canning Co.*, 309 U.S. 310, 316–17, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940).

In this case evidence of record presents a serious conflict between the parties concerning the facts underlying the charge of misappropriation. Yet no hearing was held,[3] no findings of fact were made, and

1. Rule 65 reads in pertinent part:

(a) *Preliminary Injunction.*

(1) *Notice.* No preliminary injunction shall be issued without notice to the adverse party.

(b) *Temporary Restraining Order; Notice; Hearing; Duration....* In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order....

(c) *Security.* No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained....

....

(d) *Form and Scope of Injunction or Restraining Order.* Every order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained....

2. Rule 52(a) reads in pertinent part:

(a) *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action.

3. In procedural matters such as those involved here, we look to the law of the regional circuit where appeal from the district court would normally lie. *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 955, 224 USPQ 252, 254 (Fed.Cir. 1984). However, where that circuit has not spoken on a particular point and it is unclear what view that court would take, we may look

no statement of reasons was given for issuing the injunction.

Digital argues that these *procedural* defects are not fatal to the injunction and that we are required to review the *merits*. In effect, we are asked to review the evidence and decide whether the injunction which was granted by the district court would have been granted by this court. If so, then we are urged to conclude that the district court did not "abuse its discretion" in issuing its order. Digital argues that the findings and reasons required by the rules would merely be of assistance to this court.

■ Digital's arguments misconceive our role. As a reviewing court, we have nothing before us to which appropriate appellate standards of review can be applied with respect to the *merits* of the subject injunction. Where evidence creates disputes as to the facts, the facts must be found by the district court which we must review in accordance with Rule 52(a).

■ Moreover, contrary to Digital's arguments, we are not restricted in review of the grant of an injunction to review of the *merits*. A departure from the basic procedural requirements for issuance of an injunction may also require that the injunction be vacated. *See Sims v. Greene,* 161 F.2d 87 (3d Cir.1947). In this case, we so hold since the failure to follow the procedures effectively makes the merits unreviewable.

■ Similarly, the scope of injunctive relief is itself subject to review. *Gemveto Jewelry Co. v. Jeff Cooper Inc.,* 800 F.2d 256, 230 USPQ 876 (Fed.Cir.1986). Paragraphs 1, 3, and 4 clearly preserve the status quo. With respect to paragraph 2, the relief granted is extremely broad and appears to go beyond what would be appropriate after trial. At this preliminary stage of proceedings, findings and reasons which explain the need for any injunction that goes beyond maintaining the status quo are especially necessary.

■ Finally, the district court failed to provide security for the party enjoined in accordance with Rule 65(c). If relief beyond paragraphs 1, 3, and 4 is granted by the district court, the requirement for security must be dealt with. *See Roth v. Bank of the Commonwealth,* 583 F.2d 527, 539 (6th Cir.1978).

## IV

### *Conclusion*

For the foregoing reasons, paragraph 2 of the preliminary injunction issued April 1, 1986, is vacated. Emulex having agreed before this court to paragraphs 1, 3, and 4, that portion of the injunction, as restricted by the order of this court dated August 5, 1986, remains in effect.

**VACATED IN PART.**

to other circuits for guidance. *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d 861, 875, 228 USPQ 90, 99–100 (Fed.Cir.1985).

The right to a hearing is implicit in the "notice" requirement of Rule 65(a). *See* 7 J. Moore, J. Lucas & K. Sinclair, Jr., Moore's Federal Practice ¶ 65.04[3] (2d ed. 1986); *Sims v. Greene,* 161 F.2d 87, 88–89 (3d Cir.1947). The need for a hearing is especially pressing in a situation such as we have here where relevant facts are in sharp dispute. *See SEC v. Frank,* 388 F.2d 486, 491 (2d Cir.1968). Digital's assertion that the relevant facts are not in dispute is belied by the "facts" it relies on to support its position in its brief.