ATLANTIC THERMOPLASTICS CO.,
INC., James B. Sullivan and Richard
B. Fox, Plaintiffs–Appellees,

v.

FAYTEX CORPORATION,
Defendant–Appellant.

No. 93–1110.

United States Court of Appeals,
Federal Circuit.

Sept. 30, 1993.

Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, P.C., Boston, MA, argued, for plaintiffs-appellees. With him on the brief was Richard L. Binder.

Anthony M. Lorusso, Lorusso & Loud, Boston, MA, argued, for defendant-appellant. With him on the brief was Thomas M. Saunders. Of counsel was Deborah M. Utstein.

Before ARCHER, MICHEL, and RADER, Circuit Judges.

ARCHER, Circuit Judge.

Faytex Corp. appeals the judgment of the United States District Court for the District of Massachusetts finding United States Patent No. 4,674,204 ('204 patent) not invalid and infringed by Faytex and awarding damages to Atlantic Thermoplastics Co., James B. Sullivan and Richard B. Fox (collectively, Atlantic). *Atlantic Thermoplastics Co. v. Faytex Corp.*, No. 88–0210–H (D.Mass. Oct. 28, 1992). Because the district court did not provide findings of fact relating to validity as required by Rule 52(a) of the Federal Rules of Civil Procedure, the judgment is vacated and the case is remanded. Although not required, we also consider Faytex's arguments as to the damage award and find no error.[1]

## I.

This case is before us again after remand to the district court. The facts will be dis-cussed only as necessary for this opinion.[2] For the second time these parties are here contesting the validity of the '204 patent and the damages for its infringement. *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 23 USPQ2d 1481 (Fed.Cir.1992), was remanded for fact-findings on the on-sale bar issue and for a recalculation of the appropriate damages.

Regarding the on-sale bar issue, we stated:

> The district court did not provide any findings of fact or analysis for its conclusion. Moreover, the district court's finding does not consider several offers to sell before October 1984. The district court apparently assumed, incorrectly, that mere offers do not trigger the on-sale bar rule. In any event, in the absence of findings, this court cannot determine whether the trial court properly considered those offers of sale and therefore applied the correct legal standard.
>
> After a bench trial, a trial court must put forth the findings of fact relied upon to justify its actions. Fed.R.Civ.P. 52(a). Without findings, this court has no basis to evaluate whether the district court's analysis uses the proper legal standard. *Cf. Nutrition 21 v. United States*, 930 F.2d 867, 869, 18 USPQ2d 1347, 1349 (Fed.Cir. 1991) (preliminary injunction). Because the absence of findings goes to the heart of the issue, any error cannot be harmless. Therefore, this court vacates the district court's judgment on validity and remands for a proper on-sale analysis.

*Atlantic*, 970 F.2d at 837, 23 USPQ2d at 1483. In its decision on remand, the district court has failed to carry out the remand instructions and has provided only conclusory findings, as follows:

> This court found, and again finds, that the '204 patent was not invalid under the on sale bar of 35 USC § 102(b). Faytex failed to show by clear and convincing evidence that Atlantic sold *or offered for*

---

1. Consideration of damages is for judicial efficiency since this case is now before this court for the second time.

2. For a detailed background discussion, see *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 23 USPQ2d 1481 (Fed.Cir.1992).

*sale* the claimed innersole before the critical date of October 9, 1984. Prior to that date, Atlantic had indeed engaged in negotiations with Triangle, but this court found that these preliminary negotiations concerned primarily the necessity of further prototype testing and development. Consistent with the testimony of all participants in the dealings between Atlantic and Triangle, this court found no definite sale or offer to sell prior to October 9, 1984. This court found and now reaffirms its finding that the dealings prior to the bar date were for experimental purposes and not primarily for profit.

*Atlantic,* slip op. at 1–2. Under the circumstances of this case, *see* II B., *infra,* we again must conclude that the court's findings of fact are inadequate and do not comply with Fed.R.Civ.P. 52(a).

## II.

■ A. Rule 52(a) provides:

In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon.... Findings of fact shall not be set aside unless clearly erroneous.

Rule 52(a) makes clear the separate and distinct roles of the trial and the appellate court. This court must review factual findings made by the district court; it may not guess at findings left unmade. Fact-finding by the appellate court is simply not permitted. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969)) ("The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court.... '[A]ppellate courts must constantly have in mind that their function is not to decide factual issues *de novo.*'"). Findings of fact are said to be adequate when "they are sufficiently comprehensive and pertinent to the issue to form a basis for the decision." *Medtronic, Inc. v. Daig Corp.,* 789 F.2d 903, 906, 229 USPQ 664, 667 (Fed.Cir.1986) (quoting *Loctite Corp. v. Ultraseal Ltd.,* 781 F.2d

861, 873, 228 USPQ 90, 98 (Fed.Cir.1985)). Here the court's opinion is too conclusory and sparse to provide a factual basis for determining whether the invention was on sale within the meaning of 35 U.S.C. § 102(b) prior to the critical date. *See Digital Equip. Corp. v. Emulex Corp.,* 805 F.2d 380, 382, 231 USPQ 779, 781 (Fed.Cir.1986) ("failure to follow the procedures [including making findings of fact in accordance with Rule 52(a)] effectively makes the merits unreviewable"); *Thermo Electron Corp. v. Schiavone Constr. Co.,* 915 F.2d 770, 773 (1st Cir.1990) ("Until the district court makes the findings of fact called for under [Rule 52(a)], appellant is unfairly deprived of an opportunity to pursue a meaningful appeal.").

■ Although Rule 52(a) does not require elaborate, detailed findings on every factual issue raised, it does require that the findings of the trial court include as many of the subsidiary facts as are necessary to disclose to the appellate court the steps by which the trial court determined factual issues and reached its ultimate conclusions. *See Kelley v. Everglades Drainage Dist.,* 319 U.S. 415, 422, 63 S.Ct. 1141, 1145, 87 L.Ed. 1485 (1943) ("Nor do we intimate that findings must be made on all of the enumerated matters or need be made on no others.... We hold only that there must be findings ... which are sufficient to indicate the factual basis for the ultimate conclusions."); *Golf City, Inc. v. Wilson Sporting Goods Co.,* 555 F.2d 426, 433 (5th Cir.1977) ("[T]he findings of the trial court must be sufficiently detailed to give us a clear understanding of the analytical process by which ultimate findings were reached and to assure us that the trial court took care in ascertaining the facts."). "When the trial court provides only conclusory findings, illuminated by no subsidiary findings or reasoning on all the relevant facts, as was the case here, there is not that 'detail and exactness' on the material issues of fact necessary for an understanding by an appellate court of the factual basis for the trial court's findings and conclusions, and for a rational determination of whether the findings of the trial court are clearly erroneous." *EEOC v. United Va. Bank/Seaboard Nat'l,* 555 F.2d 403, 406 (4th Cir.1977). In such cases, remand is necessary and proper. *See Echols v. Sulli-*

*van,* 521 F.2d 206, 207 (5th Cir.1975) (remanding for failure to resolve evidentiary conflicts and for conclusory findings); *Hydrospace–Challenger, Inc. v. Tracor/Mas, Inc.,* 520 F.2d 1030, 1034 (5th Cir.1975) (remanding for insufficient findings).

■ Although this court reviews judgments not opinions, *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 862, 226 USPQ 402, 408 (Fed.Cir.1985), "[w]here evidence creates disputes as to the facts, the facts must be found by the district court which we must review in accordance with Rule 52(a)." *Digital,* 805 F.2d at 382, 231 USPQ at 781. This case presents several factual disputes which must be resolved before an ultimate conclusion can be drawn as to the on-sale bar.

■ B. Atlantic had numerous dealings with a prospective purchaser of the subject innersole prior to the critical date.[3] The parties dispute whether any of three particular events triggers the application of the on-sale bar. On May 3, 1984, an Atlantic salesman met with representatives of Triangle[4] and showed them innersoles made in accordance with the claims of the '204 patent. In a July 9, 1984 letter, Atlantic quoted Triangle a "projected unit cost" of $1.30 to $1.50 per pair of "Product C"—innersoles made in accordance with the claims of the '204 patent. In an August 10, 1984 letter, Atlantic told Triangle that "we now have" the "products you want" (including Product C) and included an invoice for tooling charges for those products. Although highly probative of whether the product of the claims of the '204 patent was sold or offered for sale, the district court did not evaluate the May meeting or the July or August letters.

In its decision on remand, the district court noted that it had previously "found" that "preliminary negotiations [between Atlantic and Triangle] concerned primarily the necessity of further prototype testing and development" and therefore, those dealings "were for experimental purposes." In so concluding, the district court did not discuss any evidence relevant to the need for or the existence of testing and development of the innersole. A bare "finding" of "prototype testing and development" is inadequate to support the determination of experimental use.[5]

■ Furthermore, experimental use does not defeat the on-sale bar once the invention has been reduced to practice. *RCA Corp. v. Data General Corp.,* 887 F.2d 1056, 1061, 12 USPQ2d 1449, 1453 (Fed.Cir.1989). In this case, the patentee stated that prior to the critical date a prototype innersole "was made in accordance with the process later described in the '204 patent." Without the benefit of the district court's findings and conclusions regarding reduction to practice, however, we have nothing to review. We will not and cannot take a first look at this important issue on appellate review.

Also unanswered in the district court's opinion is how an innersole similar to one insufficiently developed to trigger an on-sale bar is capable of infringing the claims of the patent. The claims of the '204 patent require that the elastomeric insert have sufficient tack to remain in place in the mold upon the introduction of expandable polyurethane foam. If displacement occurs, a portion of the foam seeps under the bottom edges of the insert. Atlantic argues in this appeal: "If the insert moved, the innersole would be useless.... If the insert were lifted, the open-celled polyurethane would seep under

---

**3.** The critical date is October 9, 1984, one year prior to the filing date of the '204 patent. If the invention was sold or offered for sale before the critical date, other than primarily for a *bona fide* experimental purpose to perfect the invention, 35 U.S.C. § 102(b) bars Atlantic from obtaining a patent therefor.

**4.** Triangle is a division of the Campbell Soup Company.

**5.** *See Stearns v. Beckman Instruments, Inc.,* 737 F.2d 1565, 222 USPQ 457 (Fed.Cir.1984) involv-

ing a first, second and third prototype of a syringe. Samples of the second prototype were sent to prospective purchasers and a price for the syringes was quoted. The patent in suit was applied for after a third prototype was completed. The district court found that the syringe was "on sale" based on the activities involving the second prototype. Continuing prototype testing and development did not preclude the advent of the on-sale bar.

the insert and the result would be unacceptable." Atlantic further argues that the innersole of the '204 patent could not have been on sale prior to the critical date because further innersole testing was required to increase tack and eliminate displacement, thereby eliminating seepage. Yet Atlantic's representation of the infringing product shows seepage indicating that some displacement occurred during production. Again, however, the district court has not discussed any evidence or made any findings or conclusions in this regard leaving us without a reviewable record.

In Atlantic's first appeal we found the district court's opinion insufficient under Rule 52(a) and remanded the case for specific fact-findings. Without making the necessary fact-findings based on the record before it, the district court reiterates fact-dependent conclusions as to the on-sale bar just as it did in its original opinion. This is wholly inadequate; Rule 52(a) requires more. We have no choice but to remand this case to the district court a second time. On remand, the district court "shall find the facts specially and state separately its conclusions of law thereon." Fed.R.Civ.P. 52(a).

### III.

We disagree with the dissent's position that the district court has now made adequate findings. The district court has simply restated its previous conclusory findings, merely adding an equally conclusory statement as to the negotiations, without any further explanation of the underlying facts relied on or rationale to support them. The findings of the district court were insufficient then; the record before us has not changed; the findings are insufficient now.

■ The dissent suggests that there is only one possible path leading to the conclusion that there was no on-sale bar in which case we do not need expansive fact-findings. But this case is fraught with factual issues—some of which we have pointed out—that demand close examination. Only by clairvoyance could we know what evidence the district court considered and found persuasive in determining the facts underlying its conclusion of no on-sale bar. That the record

may support findings that could be implied from the district court opinion does not satisfy the requirement that findings adequate to support the judgment be "specially" found. It is not the function of an appellate court "to search the record and analyze the evidence in order to supply findings which the trial court failed to make." *Kelley v. Everglades,* 319 U.S. at 421–22, 63 S.Ct. at 1145. The dissent's hypothetical opinion may articulate some or many of the district court's unwritten findings but we do not know which of the hypothetical findings the district court would have made. If we succumb to making findings to justify the lower court's conclusion, our role as an appellate court has been abrogated and we have not performed our duty. We therefore believe it is proper, as well as required by Rule 52(a), that the district court perform its fact-finding role in the first instance. In doing so, it may or may not agree with the fact-findings in the dissenting opinion.

### IV.

On remand, the district court thoroughly reviewed and recalculated the damages award "using a permissible market share approach" as instructed by this court. *Atlantic,* 970 F.2d at 847, 23 USPQ2d at 1492. In determining Atlantic's market share, the district court took into account the patented innersoles and acceptable noninfringing substitutes. Atlantic was awarded lost profits on its market share percentage of the infringing sales and a reasonable royalty on the remaining infringing sales.

■ Faytex contends that the district court's determination of the relevant market was unreasonable because it did not include the 16 domestic and several foreign manufacturers of foam innersoles. The district court concluded that the "Sorbothane products were the only acceptable non-infringing substitute" based on its finding that other products on the market "did not have the beneficial attributes of the light weight molded polyurethane innersoles with shock-absorbing inserts." *Atlantic,* slip op. at 3. We are not persuaded that this finding is clearly erroneous. *See Standard Havens Prods.,*

*Inc. v. Gencor Indus., Inc.,* 953 F.2d 1360, 1373, 21 USPQ2d 1321, 1331 (Fed.Cir.1991) ("[T]he mere existence of a competing device does not necessarily make that device an acceptable substitute. A product on the market which lacks the advantages of the patented product can hardly be termed a substitute acceptable to the customer who wants those advantages." (citations omitted)); *TWM Mfg. Co. v. Dura Corp.,* 789 F.2d 895, 901, 229 USPQ 525, 529 (Fed.Cir. 1986) (a finding that alleged substitutes did not have the beneficial characteristics of the patented product supported the determination that there were no acceptable substitutes).

The district court found Atlantic entitled to a royalty rate of $0.25 per pair of innersoles because "[t]his is the royalty rate at which Atlantic offered to license the invention of the '204 patent to Spenco Medical Corporation and is consistent with the commercial value and profitability of the '204 patent and the extensive remaining life of the patent at the time of the infringement." *Atlantic,* slip op. at 4. Contrary to Faytex's argument, there was sufficient evidence of record to support the district court's finding, which we do not hold to be clearly erroneous.

## COSTS

Each party to bear its own costs.

*VACATED and REMANDED.*

RADER, Circuit Judge, dissenting.

Citing inadequate findings from the trial court, this court vacates and remands a second time. I dissent. Federal Rule of Civil Procedure 52 requires the trial court to "find the facts specially and state separately its conclusion of law thereon." In this case, the district court—after twenty-five days of trial and further proceedings upon remand from this court—made findings and reached conclusions. The record amply supports those findings and conclusions. This court should therefore affirm.

Rule 52 does not require district judges, like cartographers, to produce a map marking each turn in reasoning clearly enough for even circuit judges to follow. Particularly when the facts and law show that the trial court could reach no other conclusion than it reached, cartography skills are not the hallmark of judging. In this case, the record itself discloses an unmistakable path to the district court's legal judgment. This court should not need, nor require, a roadmap. Nonetheless, in the interest of comity, I will supply the map [*]:

### In the United States District Court

This district court finds that the '204 patent is not invalid under the on-sale bar of 35 U.S.C. § 102(b). Faytex has the burden of showing by clear and convincing evidence that Atlantic sold or offered for sale a product embodying (or rendering obvious) the claimed innersole before the critical date of October 9, 1984. *See Buildex Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1462–63, 7 USPQ2d 1325, 1326–27 (Fed.Cir.1988). After reviewing the record of twenty-five days of trial and the parties' submissions on remand, this court finds that Faytex did not meet its burden.

The United States Court of Appeals for the Federal Circuit has set forth several tests for the on-sale bar of 35 U.S.C. § 102(b). The appellate court has stated that the on-sale bar requires: (1) the complete invention claimed must have been embodied in or obvious in view of the subject matter of the sale; (2) the invention must have been tested sufficiently to verify its operability; and (3) the sale must have been primarily for profit rather than experimental purposes (Test No. 1). *See King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 859–60, 226 USPQ 402, 406 (Fed. Cir.1985), *cert. denied,* 475 U.S. 1016 [106 S.Ct. 1197, 89 L.Ed.2d 312] (1986); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835–37, 221 USPQ 561, 564–65 (Fed.Cir.1984); *see also*

[*] The citations to the record in this hypothetical district court opinion refer to the record in this case on appeal.

*In re Corcoran,* 640 F.2d 1331, 1333–34, 208 USPQ 867, 870 (CCPA 1981).

The Federal Circuit has cautioned, however, that this test does not apply in all cases. *Barmag,* 731 F.2d at 837. Circumstances may require a court to apply a less stringent standard to avoid frustrating the policies underlying the bar. *King,* 767 F.2d at 860. Those policies include: (1) discouraging removal of inventions from the public domain that the public justifiably believes are freely available; (2) favoring prompt and widespread disclosure of inventions; (3) prohibiting extension of the statutory period of exclusive rights; and (4) providing a reasonable time after sales activity for inventors to determine whether the invention warrants the expense of patenting. *Id.* Thus, this district court recognizes that it must temper application of Test No. 1 with consideration of these policies.

In other cases, the Federal Circuit set forth another version of the on-sale bar test requiring: (1) a sale or definite offer to sell more than one year prior to the critical date; (2) evidence that the thing sold or offered for sale anticipates or renders obvious the later-claimed invention; and (3) weighing of the circumstances surrounding the sale or offer in light of the underlying policies. *See UMC Elec. Co. v. United States,* 816 F.2d 647, 656, 2 USPQ2d 1465, 1471–72 (Fed.Cir.1987), *cert. denied,* 484 [U.S.] 1025 [108 S.Ct. 748, 98 L.Ed.2d 761] (1988). This second formulation adds to the complexity of the first test.

Finally, in some cases, the Federal Circuit has gone straight to weighing of the "totality of the circumstances" against the policies because "the policies or purposes underlying the on-sale bar, in effect define it." *E.g., Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 549–50, 16 USPQ2d 1587, 1591–92 (Fed.Cir.1990). After full consideration of this bewildering and blinding blizzard of instructions,[1] this district court determines that Atlantic's patent is not invalid under the on-sale bar. For the reasons given below, Faytex did not meet its burden under any of the Federal Circuit's tests.

Under Test No. 1, Atlantic's invention was not sufficiently developed to have been on-sale before October 9, 1984. As noted above, the Federal Circuit has stated that the subject matter of the sale or offer to sell must fully anticipate the claimed invention or must render the claimed invention obvious by its addition to the prior art.[2] *Buildex,* 849 F.2d at 1462; *UMC,* 816 F.2d at 656.

---

**1.** Commentators note that recent Federal Circuit on-sale bar decisions have not provided district courts and practitioners with any sense of predictability. *See* David W. Carstens & Craig Allen Nard, *Conception and the "On Sale" Bar,* 34 Wm. & Mary L.Rev. 393, 398 (1993) (each Federal Circuit decision analyzing on-sale bar "involved a different panel of three judges, and each panel analyzed the 'on sale' bar differently"); William K. West, Jr. & Nancy J. Linck, *The Law of "Public Use" and "On Sale": Past Present and Future,* 72 J. Pat. & Trademark Off. Soc'y 114, 115 (1990) (Federal Circuit's insistence on "totality of circumstances" test may tend to make predictability of result even more difficult than before); Comment, Envirotech Corp. v. Westech Engineering, Inc.: *The On–Sale Bar to Patentability and Executory Sales Offers,* 75.Minn.L.Rev. 1505, 1508 (1991) (recognizing that some commentators criticize the Federal Circuit's application of the on-sale bar for lacking predictability, failing to inform inventors how to behave, failing to inform lower courts how to invoke the bar, and thus encouraging litigation); Note, UMC Electronics v. United States: *Should Reduction to Practice be a Requirement of the On Sale Bar?,* 12 U. Puget Sound L.Rev. 131, 161 (1988) (Federal Circuit's "totality of circumstances" test fails to provide district courts, patent attorneys and inventors with predictability as to when the on-sale bar is triggered). Despite the Federal Circuit's maze of different legal formulations for the on-sale bar, this district court recognizes its obligation to follow all directives of the Court of Appeals. Thus this district court shall endeavor to comply with all the varied formulations.

**2.** Commentators have suggested that this standard is not a model of clarity. *See, e.g.,* 1 Martin J. Adelman, *Patent Law Perspectives* § 2.3[7.–2] at 2–182.3 ("A badly divided Federal Circuit panel has considerably confused the law of 'on sale' by holding in *UMC Electronics Co. v. United States* that an invention need not have been 'actually reduced to practice' in order to be 'on sale' within the meaning of 35 U.S.C. § 102(b)."); Robert L. Harmon, *Patents and the Federal Circuit* 63–64 (2d ed. 1991) ("Upon closer analysis, however, the court's ruling seems less than clear.... [I]t can only cause confusion in interference law, with its special technical considerations, and in operation of the on-sale bar....").

Faytex contends that Atlantic offered to sell its innersole to Triangle at a meeting on May 3, 1984. At the May 1984 meeting, Atlantic identified its innersole as experimental and still under development. (Appendix (App.) 103–04, 294–95, 467–69, 473, 640.) Referring to the May 3 meeting, Mr. Richard Fox, one of the inventors, testified: "I didn't want to sell something that we couldn't make." (App. 158.)

On the second part of Test No. 1, the invention was not complete principally because the elastomeric insert was not tacky enough to stay in place in the mold upon injection of the polyurethane. (App. 158–59, 393–97, 404–05.) Indeed testing and experimentation did not solve this problem until at least November or December of 1984. (App. 112–13, 158–60A, 403–07, 469–80.) Without sufficient tack, the heel insert could shift out of position and defeat the cushioning purpose of the invention. (App. 112, 160A, 403–05.) Atlantic had not developed the invention sufficiently to serve its intended purpose until after the critical date of October 9. Accordingly, the on-sale bar cannot apply. *See A.B. Chance Co. v. RTE Corp.,* 854 F.2d 1307, 1311–12, 7 USPQ2d 1881, 1884–85 (Fed. Cir.1988).

On the third prong of this first test for an on-sale bar, the alleged commercial activity between Atlantic and Triangle during 1984 and early 1985 fits within the experimental use exception to the on-sale bar. The Federal Circuit states that a sale for experimental, rather than commercial purposes, does not constitute a bar. *Manville,* 917 F.2d at 550.

From the outset of their relationship, Atlantic and Triangle both insisted on extensive testing to determine whether the invention would work. (App. 467, 469–70.) Atlantic sent samples of its developing product to Triangle for testing as late as January 1985. (App. 467, 469–70, 471, 903.) To ensure that the testing remained experimental rather than commercial, Atlantic required Triangle to keep the prototype confidential. (App. 104, 645, 649.)

Atlantic's insistence on confidentiality underscores the experimental nature of its prototype product. Rather than seeking secrecy, commercial profit-seekers advertise.

The Federal Circuit has clarified that any testing must relate to the claimed features of the invention to qualify as experimental. *In re Brigance,* 792 F.2d 1103, 1109, 229 USPQ 988, 991–92 (Fed. Cir.1986). Claim 1 of the '204 patent requires the elastomeric insert to have "sufficient surface tack to remain in the placed position in the mold on the introduction of the expandable polyurethane material." Thus, Atlantic satisfies this requirement as well.

Finally, Atlantic did not commercially exploit the invention at all. Atlantic did not even receive any money for the test samples it sent Triangle until a January 1985 shipment, well after the October 1984 critical date. (App. 299, 471, 908.) As noted above, Atlantic could have sold its prototypes for experimental purposes without triggering the on-sale bar. *Manville,* 917 F.2d at 550. Perhaps out of an abundance of caution, Atlantic did not even risk experimental sales. It sold nothing. Atlantic exhibited the classic hallmarks of experimentation, not commercialization. *See id.* It did not trigger the on-sale bar.

Faytex argues that the activities between Atlantic and Triangle could not have been experimental because Atlantic's inventors admitted reducing the invention to practice before May 1984. *See RCA Corp. v. Data General Corp.,* 887 F.2d 1056, 1061, 12 USPQ2d 1449, 1453 (Fed.Cir.1989) (for on-sale purposes, experimentation ends with reduction to practice). Faytex moved pretrial for summary judgment contending that a prior art reference anticipated the '204 patent. To show that the '204 patent antedated the prior art reference, Faytex argues that Atlantic needed to claim reduction to practice before May 1984. Faytex is incorrect. In denying Faytex's motion for summary

Like expert commentators, this district court struggles on occasion to discern the Federal Circuit's legal guidelines. Nonetheless this district court gave Faytex wide latitude to show that the subject matter of the purported offer would have rendered the claimed invention obvious.

judgment, this district court did not find a reduction to practice before May 1984 because such a finding was unnecessary. To predate a prior art reference, an inventor need only show prior conception and reasonable diligence to reduce the invention to practice. *See Griffith v. Kanamaru,* 816 F.2d 624, 626, 2 USPQ2d 1361, 1362 (Fed. Cir.1987).

Moreover, the supposed admissions by the '204 patent's inventors do not admit reduction to practice before May 1984. Rather the inventors noted repeatedly that they had an "experimental prototype" before and after May 1984. (App. 413, 651–52, 657–58, 660–61, 696, 698.) By use of the term "experimental prototype," the inventors made clear the experimental nature of their invention in May 1984. (App. 413.) Furthermore, this district court finds that any alleged evidence of pre-May 1984 reduction to practice is greatly outweighed by the evidence at trial showing that Atlantic's inventors did not reduce the invention to practice until November 1984 or later. (App. 160–61, 361–61A, 362–63, 408, 469, 661, 698.)

Thus, under Test No. 1, Faytex did not show that Atlantic's '204 patent is invalid under the on-sale bar. *See Barmag,* 731 F.2d at 837. Consideration of the policies underlying the on-sale bar buttresses this conclusion. None of Atlantic's activities could have led the public to believe that the invention later described in the '204 patent was available. Atlantic did not exploit the invention commercially, and

therefore did not try to extend the statutory period of exclusivity. In light of the inventors' work to solve the tackiness problem, among others, they did not unduly delay the disclosure of the invention to the public. Rather the inventors took a reasonable time to learn the merits of their invention. Rejecting Faytex's assertion of the on-sale bar furthers, rather than frustrates, the "statutory policies".[3]

Next, this district court proceeds to consider the additional factors mentioned in the Federal Circuit's second formulation of the on-sale bar. Faytex did not show a *definite* sale of or offer to sell a product embodying the patented invention before October 9, 1984. *See RCA Corp.,* 887 F.2d at 1062 ("where there is no sale, a definite offer to sell is an essential requirement of the on-sale bar"). Faytex asserts that two letters from Atlantic to Triangle evince a definite offer to sell the patented invention. Neither letter, however, contains a definite offer to sell. The letters contain no quotation of price, no discussion of quantity, no delivery terms, no payment terms, no warranties, nor any other hallmark of an offer to sell. (App. 701–03, 711–14.) Neither letter could have been "accepted" by Triangle to create a binding contract between it and Atlantic. The letters are simply too indefinite.

The indefiniteness of both letters is starkly in contrast to the offer for sale in *Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.,* 731 F.2d 831, 221 USPQ 561 (Fed.Cir.1984). At most, the

---

**3.** Although the Federal Circuit has referred to these policies as "statutory policies," *see King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 860, 226 USPQ 402, 406 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016 [106 S.Ct. 1197, 891 L.Ed.2d 312] (1986); *Western Marine Elec. v. Furuno Elec. Co.,* 764 F.2d 840, 844, 226 USPQ 334, 337 (Fed.Cir.1985); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 837, 221 USPQ 561, 565 (Fed.Cir.1984), it is not clear that they are. If Congress had intended this flurry of "statutory policies" to govern the on-sale bar, it would probably have inserted them into the statute. Because not in the statute, these policies should probably not be called "statutory."

A · multi-factored "totality of the circumstances" test no doubt satisfies a judge's preference for the discretion to emphasize those factors

favoring an equitable outcome. *See UMC Elec. Co. v. United States,* 816 F.2d 647, 664 (Fed.Cir. 1987) (Smith, J., dissenting), *cert. denied,* 484 U.S. 1025 [108 S.Ct. 748, 98 L.Ed.2d 761] (1988). In an international marketplace, however, the predictability and certainty of a bright-line test, such as that suggested by section 102(b) of the Patent Act, ought to trump judicial discretion. Moreover, as Judge Smith noted in his compelling dissent in the *UMC* case, the on-sale bar is in the nature of a statute of limitations, and therefore the onset of the bar must be reasonably clear. *See id.* at 659–60 (Smith, J., dissenting). This district court nonetheless afforded Faytex ample opportunity to show that application of the on-sale bar would further these "policies" as well as the statutory requirements of the Patent Act.

letters disclose Atlantic's intent or desire ultimately to sell Triangle the product later described in the '204 patent—if the product could be developed. Such an intent is different from an offer to sell and does not trigger the on-sale bar. *Envirotech Corp. v. Westech Eng'g Inc.*, 904 F.2d 1571, 1574–75, 15 USPQ2d 1230, 1232–33 (Fed.Cir.1990).

Faytex incorrectly argues that the July 9, 1984 letter contains a price quotation that, when combined with the parties' other dealings, constituted an offer to sell. The July 9 letter merely contained a request for payment of tooling costs that Atlantic incurred in making mold tools and patterns for several products, including its experimental innersole. The letter does not contain a price quotation for sale of the innersole later described in the '204 patent. By its terms, the letter merely provides a range of projected unit costs for the various innersoles. Neither Atlantic nor Triangle viewed the July 9 letter as providing a price quote. (App. 320, 480–82, 650–51.) Atlantic provided the projections to enable Triangle to make an economic decision about incurring the tool and die expenses for the respective products. (App. 320.)

In fact, on November 5, 1984, nearly one month after the critical date, James W. Post, General Manager of Health and Fitness Systems at Triangle/Campbell, sent a letter to Robert Fox of Atlantic concerning several of Atlantic's products, including the incomplete invention. That letter contained the following post-script: "I'm also waiting for your first crack at pricing all five products." (App. 904.) Triangle was still waiting for Atlantic's first price quote on the experimental innersole in November 1984, months after the July 9 letter, and nearly one month after the critical date. Clearly the July 9 letter contained no price quotation and thus no definite offer to sell the innersole. This finding, when coupled with this court's consideration of the policies underlying the on-sale bar, leads this court to conclude that Faytex did not meet the Federal Circuit's second batch of requirements for the on-sale bar.

Finally, going directly to consideration of the policies underlying the on-sale bar, this district court again discerns no record support for an on-sale bar. As noted above, Faytex has not shown how rejection of its assertion of the on-sale bar will frustrate any of these policies. Thus, Faytex has not met its burden under the Federal Circuit's third formulation of the on-sale bar.

Under each of the three Federal Circuit on-sale bar tests,[4] Faytex does not meet its burden. To repeat, the record of trial clearly shows that the innersole described in the '204 patent was not on sale more than one year before the application date: the innersole was not sufficiently developed before the critical date; the innersole was still in testing until after the critical date; the innersole provided Atlantic no economic return at all before that date; Atlantic made no sale of or definite offer to sell the experimental innersole before the critical date; the policies underlying the on-sale bar do not support Faytex's case. Each of these findings independently warrants rejection of the on-sale bar. Moreover as noted above, Faytex had a high burden to meet this defense. Viewing all of the circumstances, this court finds that the '204 patent is not invalid under the on-sale bar.

This appellate court has repeatedly stated that it reviews "judgments not opinions." *E.g., Chemical Eng'g Corp. v. Essef Indus. Inc.*, 795 F.2d 1565, 1572, 230 USPQ 385, 390 (Fed.Cir.1986), *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556 (Fed.Cir. 1985); *Chore–Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 781, 218 USPQ 673, 677 (Fed.Cir.1983). In reviewing,

we are not ourselves finding those facts which the trial court failed to set out for us. As an appellate court, we lack the power to perform that exercise. Where the trial court fails to make findings, the judgment will normally be vacated and the

---

**4.** While the Federal Circuit may in fact have more than three tests (the circuit is authorized twelve judges, 28 U.S.C. § 44 (1988)), this district court's study suggests that these three tests adequately represent the basic factors given weight by the Federal Circuit.

action remanded for appropriate findings to be made. [Footnote omitted.] Where a full understanding may be had without the aid of separate findings, however, we recognize a narrow exception to that general rule. [Footnote omitted.]

*ACS Hospital Systems, Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1578, 221 USPQ 929, 933 (Fed.Cir.1984). In the instant case, the record abundantly supports the district court's judgment. This court correctly remanded when the district court in a single sentence found no statutory bar. *Atlantic Thermoplastics Co. v. Faytex Corp.,* 970 F.2d 834, 836–37, 23 USPQ2d 1481, 1483 (Fed.Cir. 1992). At that time, this court had nothing to review. *Id.* 970 F.2d at 837. On remand, however, the trial court reviewed the entire issue a second time. For the reasons set forth above, the district court again found no bar. This court now calls for still another remand.

As this court has stated, however, " '[n]o useful purpose would be served by a remand to enable the district court to tell us in express terms what we already know from the record.' " *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,* 3 F.3d 404, 415 (Fed.Cir.1993) (*citing Consolidated Aluminum, Corp. v. Foseco Int'l. Ltd.,* 910 F.2d 804, 815, 15 USPQ2d 1481, 1489 (Fed.Cir. 1990)). Although its opinion erected a few signposts instead of drawing a detailed map, the district court satisfied Rule 52. Because the record supports that judgment, this appellate court need not demand a roadmap.