19 F.3d 39
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
DEVON INDUSTRIES, INC., Plaintiff-Appellee,
v.
AMERICAN MEDICAL MANUFACTURING, INC., Defendant-Appellant.
 No. 93-1307.
 United States Court of Appeals, Federal Circuit.
 Feb. 3, 1994.
 
 Before NIES, Chief Judge, MAYER and LOURIE, Circuit Judges.
 DECISION
 LOURIE, Circuit Judge.
 
 
 1
 American Medical Manufacturing, Inc. ("AMMI") appeals from an order of the United States District Court for the Central District of California granting the motion for preliminary injunction of Devon Industries, Inc. enjoining AMMI from infringing claim 10 of U.S. Patent 4,605,124 pending a trial for patent infringement on the merits. Devon Indus., Inc. v. American Medical Mfg., Inc., No. CV 92-7406-RMT (SHx) (C.D.Cal. Feb. 26, 1993) (Order). Because the court's grant of a preliminary injunction was based on an improper claim interpretation, an error of law, we vacate and remand.
 
 DISCUSSION
 
 2
 Dan Sandel, presently Devon's Chief Executive Officer, and Michael Hoftman, formerly Devon's Senior Vice President and presently AMMI's President and Chief Executive Officer, jointly invented the claimed subject matter of the '124 patent, entitled "Disposable Cover for Surgical Light Handle," while both were employed by Devon. The invention relates to operating room light fixtures that are positioned above an operating table and handled by medical personnel during surgical procedures. Generally, the invention includes a replacement light fixture handle, an adapter for connecting the replacement light fixture handle to a light fixture, and a sterile cover for covering the replacement light fixture handle. Using such a cover, medical personnel may grip and reposition a surgical light by its handle, replacing the cover after each use to maintain a sterile environment in the vicinity of a patient. Prior to filing the patent application that issued as the '124 patent, Sandel and Hoftman assigned the invention to Devon.
 
 
 3
 After leaving Devon, Hoftman designed a replacement light fixture handle, mounting adapter, and disposable cover for AMMI ("the AMMI assembly"), and Hoftman was granted U.S. Patent 5,156,456 for such an assembly. On December 17, 1992, Devon sued AMMI for infringement of claim 10[1] of the '124 patent, and applied to the district court for a temporary restraining order to prevent the manufacture and sale of AMMI's assembly. The district court denied Devon's application for a temporary restraining order, but invited Devon to file a motion for preliminary injunction, which Devon did. AMMI filed an opposition.
 
 
 4
 The motion for preliminary injunction and opposition were supported by declarations and exhibits, including photographs of the allegedly infringing AMMI assembly. The trial judge cancelled a scheduled hearing in connection with the motion and notified the parties that he would decide the motion based on the submitted record. Without a hearing and without inspecting the actual AMMI assembly, the judge entered an order enjoining AMMI from infringing claim 10 of the '124 patent. From this order, AMMI appealed. We have exclusive jurisdiction over such an appeal pursuant to 28 U.S.C. Sec. 1292(a)(1) and (c)(1) (1988).
 
 
 5
 The issuance of a preliminary injunction is a matter within the discretion of the district court. New England Braiding Co., Inc. v. A.W. Chesterton Co., 970 F.2d 878, 882, 23 USPQ2d 1622, 1625 (Fed.Cir.1992). However, to obtain preliminary injunctive relief, a movant must establish a right thereto in light of the following four factors: (1) whether the movant is reasonably likely to succeed on the merits at trial; (2) whether the movant will suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of hardships tips in the movant's favor; and (4) whether the injunction is in the public interest. Id. (citations omitted). Each factor must be weighed and assessed against the others and against the form and magnitude of the relief requested. Hybritech, Inc. v. Abbott Lab., 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988). A court's grant of a preliminary injunction will be overturned only on a showing that it abused its discretion, committed an error of law, or seriously misjudged the evidence. We-Care, Inc. v. Ultra Mark, Int'l Corp., 930 F.2d 1567, 1570, 18 USPQ2d 1562, 1564 (Fed.Cir.1991) (quoting H.H. Robertson, Co. v. United Steel Deck, Inc., 820 F.2d 384, 387, 2 USPQ2d 1926, 1927 (Fed.Cir.1987)).
 
 
 6
 The first factor required to be established by a party seeking a preliminary injunction is that there be a reasonable likelihood of success on the merits when the trial court finally adjudicates the dispute. A patent holder must establish a likelihood of success on the merits both with respect to infringement and validity. Hybritech, 849 F.2d at 1451, 7 USPQ2d at 1196. AMMI principally contests the district court's determination that Devon will likely succeed on the merits of its infringement claim at trial.[2]
 
 
 7
 A determination of patent infringement requires a two-step analysis. First, a claim must be interpreted to determine its scope and meaning; second, it must be determined whether an accused device is within the scope of the properly interpreted claim. ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1578, 6 USPQ2d 1557, 1559 (Fed.Cir.1988). The first step is an issue of law and the second a question of fact. Minnesota Mining & Mfg., Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1570, 24 USPQ2d 1321, 1330 (Fed.Cir.1992) (citations omitted).
 
 
 8
 AMMI argues that two limitations of claim 10 were misinterpreted by the district court and that, as properly construed, they are not met by the AMMI assembly. The first claim limitations at issue is "[cover] flange being of a generally like configuration to that of said handle flange for mating engagement with said handle flange, whereby said cover body may be fitted over and closely fitted to said replacement light fixture handle." AMMI argues that the cover flange is limited to one that is approximately the same size and shape as the light fixture handle flange. We disagree.
 
 
 9
 Words in a claim are to be given their ordinary and accustomed meaning unless it appears the inventor used them differently. See, e.g., Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 759, 221 USPQ 473, 477 (Fed.Cir.1984). To ascertain the true meaning of disputed claim language, resort should be made to the claim at issue, the specification, and the prosecution history. See, e.g., Minnesota Mining, 976 F.2d at 1576, 24 USPQ2d at 1335.
 
 
 10
 The '124 patent specification states "[t]he light fixture handle flange may be either of the disc-shaped variety, the conical-shaped variety or other shape." Col. 4, lines 11-13. The corresponding shape of the exemplary cover flange is of a "mating configuration." The fit of the cover flange is described by way of several alternative embodiments, including an "elastically expanded snug fit," "an adhering fit," and "a snap fit." One embodiment, shown in Figures 11 and 12, describes a cover having a flange of a greater size than the handle flange. Thus, the cover flange and handle flange need not be of the same size and shape, as long as they are of "generally like configuration" and "matingly engage" so that the cover may be fitted over and closely fitted to the replacement light fixture handle in accordance with the language of claim 10. Our review of the prosecution history does not alter this conclusion. Accordingly, AMMI has not convinced us that the court committed error in interpreting the first disputed claim limitation.
 
 
 11
 The second limitation of claim 10 at issue is "thin walled impervious plastics [sic] or rubber like material cover body." The court found that the accused AMMI device is made of a "thin walled impervious plastic." However, according to AMMI, the meaning of thin walled cover should be limited by the specification and prosecution history to a cover having a flange that is comprised of a collapsible, thin walled material, whereas the AMMI assembly has a flange comprised instead of a rigid plastic. Devon counters that this interpretation would impermissibly narrow the ordinary meaning of the term "thin walled."
 
 
 12
 The specification of the '124 patent states:
 
 
 13
 [the cover] flange and grip portions may be foldable and collapsible respectively to facilitate packaging the cover for storage ... [and the] cover may be composed of any elastic sterilizable material such as plastic, synthetic rubber, silicone, or laytex [sic] or any other material that will remain impervious even while exposed to sterization [sic] by heating. The material should be preferably thin and pliant ...
 
 
 14
 Col. 2, lines 4-7; Col. 4, lines 30-35 (emphasis added). This description defines a foldable, collapsible, elastic, and thin cover. However, use of the word "may" indicates that those qualities are permissive. In fact, with respect to certain embodiments, portions of the cover are described by the specification as "fairly stiff" and rigid. See Col. 5, lines 23-26. Nonetheless, these facts alone do not control the interpretation of the language "thin walled" when there are contrary indications of meaning.
 
 
 15
 Prosecution history may limit the interpretation of claims so as to exclude any claim interpretation that might have been disavowed in order to obtain allowance. Standard Oil Co. v. American Cyanamid Co., 774 F.2d 448, 452, 227 USPQ 293, 296 (Fed.Cir.1985). During the prosecution of the patent at issue, prior art was cited that disclosed a safety cover for an ampoule, or sealed glass vial, to shield a user from jagged glass edges when the user breaks open the ampoule's sealed tip. In order to distinguish the light handle cover from the prior art ampoule cover, the patentees made the following argument to the patent examiner:
 
 
 16
 It is apparent that the function of [the prior art flange] is to prevent the user's fingers from being cut on sharp glass edges after the tip is severed. It is submitted that [the prior art flange], to function in this manner would not be provided in the form of a collapsible thin walled material as is applicant's cover, including the flange portions, but rather must have sufficient body to it to prevent a sharp glass edge from protruding or penetrating through the flange into contact with the person's finger [emphasis added].
 
 
 17
 The findings and conclusions of the district court do not indicate that the court considered the significance of this argument. This was error because the court must consider the patentees' own interpretation of their claims made during prosecution. See Minnesota Mining, 976 F.2d at 1576, 24 USPQ2d at 1335. When that is done, it becomes clear that, whatever the patentees intended to claim when they drafted their specification, they subsequently limited the scope of their claims in order to obtain allowance. Specifically, in an attempt to distinguish the claimed invention from the prior art and to persuade the examiner of the invention's patentability, the patentees, by their description of "thin walled," argued against an interpretation of their claim that would permit it to read on a cover flange that is not provided in the form of a collapsible, thin walled material, one that has sufficient body to it to prevent a sharp glass edge from protruding or penetrating through it. Such an interpretation has been disclaimed. See Biodex Corp. v. Loredan Biomedical Inc., 946 F.2d 850, 863, 20 USPQ2d 1252, 1262 (Fed.Cir.1991), cert. denied, 112 S.Ct. 2957 (1992). We therefore hold that claim 10 is limited to a collapsible, thin walled cover that lacks sufficient body to prevent a sharp glass edge from protruding or penetrating through it. The court erred in concluding otherwise.
 
 
 18
 Devon urges that the judicially developed guide to claim interpretation known as "claim differentiation" mandates interpretation of claim 10 in such a way as to distinguish it from dependent claim 13, which recites that the body flange and grip portions are "foldable and collapsible." See Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1538, 19 USPQ2d 1367, 1371 (Fed.Cir.1991). "Claim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated." Autogiro Co. of Amer. v. United States, 384 F.2d 391, 404, 155 USPQ 697, 708 (Ct.Cl.1967). In light of the prosecution history, the term "thin walled" must be interpreted to mean that the structure is collapsible, irrespective of claim 13. Thus, we find Devon's invocation of the doctrine of claim differentiation unpersuasive.
 
 
 19
 Having construed the claim limitations at issue, the next question is whether the court misjudged the evidence in determining that the accused device meets the limitations of the claim. See Hi-Life Prods., Inc. v. American Nat'l Water-Mattress Corp., 842 F.2d 323, 325, 6 USPQ2d 1132, 1133 (Fed.Cir.1988) (a determination of literal infringement requires that each limitation in the asserted claims be present in the accused device). On the record as submitted, the district court concluded that a
 
 
 20
 comparison between photographs of AMMI's product and the thickness defined in Claim 10, taking into consideration the context in which this description is found and the function of the "thin walled" material, leads this court to find that AMMI's disposable cover is made out of a "thin walled" impervious plastic.... On AMMI's product, the outside diameter on the replacement handle flange is compatible with the inside diameter of the cover flange making the handle and cover, essentially, fit together or matingly engage. As such, AMMI's cover flange is of a generally like configuration to that of the handle flange for mating engagement with the handle flange, whereby the cover body may be fitted over and closely fitted to the replacement handle.
 
 
 21
 AMMI complains not only that the district court's finding of infringement rests on an improper claim interpretation, but that the court's reliance only on pictures, brochures, and written arguments of counsel instead of on a visual inspection of the AMMI assembly at a hearing led to a clearly erroneous finding of likelihood of infringement by the trial judge.[3]
 
 
 22
 Because the grant of a preliminary injunction is an extraordinary remedy, not to be routinely granted, Nutrition 21 v. United States, 930 F.2d 867, 869, 18 USPQ2d 1347, 1349 (Fed.Cir.1991), such relief is not normally granted absent a hearing by the trial court, see Digital Equipment Corp. v. Emulex Corp., 805 F.2d 380, 382-83 & n. 3, 231 USPQ 779, 781 & n. 3 (Fed.Cir.1986). We have had the benefit of examining the accused device, which was used as a visual aid at oral argument without objection, but we decline to make the ultimate fact-finding by applying the claim limitation "thin walled" to the AMMI device. We leave that determination to the district court on remand when it has had an opportunity to examine the device firsthand.
 
 
 23
 In finding that Devon demonstrated a reasonable likelihood of success with a clear showing of validity and infringement, the district court concluded that irreparable harm may be presumed. See H.H. Robertson Co. v. United Steel Deck, Inc., 820 F.2d 384, 390, 2 USPQ2d 1926, 1929-30 (Fed.Cir.1987). In view of our conclusion regarding infringement, however, the determination that such a presumption existed was erroneous.
 
 
 24
 With respect to the third and fourth requirements for a preliminary injunction, the court considered the relative hardships to each party, ultimately concluding that the harm to AMMI upon issuance of a preliminary injunction was equal to the harm to Devon in the absence of such a grant. Furthermore, the trial court determined that the benefit to the public interest conferred through the protection of valid patent rights outweighed the generalized harm to the public interest that AMMI alleged would result from the grant of a preliminary injunction. Although AMMI has not shown these findings to be clearly erroneous, they alone do not justify the relief sought in view of our other conclusions.
 
 
 25
 In summary, the district court's grant of a preliminary injunction was erroneous because it rested on an improper claim interpretation, an error of law, which undermined the court's determination of likelihood of success and irreparable harm. See, e.g., We-Care, Inc. v. Ultra Mark, Int'l Corp., 930 F.2d 1567, 18 USPQ2d 1562, (Fed.Cir.1991). Accordingly, we vacate the injunction and remand for further proceedings consistent with this opinion.
 
 COSTS
 
 26
 Each party shall bear its own costs.
 
 
 
 [1]
 Claim 10 reads as follows:
 An assembly of disposable cover, replacement light fixture handle and handle mounting adapter for replacing a conventional light fixture handle of a surgery room light fixture and providing for disposable sterile covering of the replacement handle, said assembly comprising:
 a replacement light fixture handle having a grip portion depending from a handle flange and means for receiving an adapter mounting member for mounting of said replacement handle to said fixture;
 an adapter mounting member including first interconnecting means for interconnecting said member to said replacement handle and second interconnecting means for interconnecting said member to said light fixture on removal of the fixture conventional handle; and
 a sterile, disposable thin walled impervious plastics or rubber like material cover body including a generally cylindrical and hollow grip portion and a flange integral with said grip portion at an open end thereof, said flange being of a generally like configuration to that of said handle flange for mating engagement with said handle flange, whereby said cover body may be fitted over and closely fitted to said replacement light fixture handle.
 
 
 [2]
 As to the issue of validity, the district court held that AMMI is barred by the doctrine of assignor estoppel from asserting that claim 10 of the '124 patent is invalid. See Shamrock Tech., Inc. v. Medical Sterilization, Inc., 903 F.2d 789, 14 USPQ 1728 (Fed.Cir.1990) (assignor of patent and those in privity are estopped from asserting invalidity). While AMMI does not dispute the district court's ruling of estoppel, it urges us nonetheless to consider sua sponte the issue of validity in view of the fact that another district court has denied a motion for preliminary injunction partially on the basis of a finding of likely invalidity of the '124 patent. See Devon Indus., Inc. v. Quantech, Inc., Cause No. NA 90-23-C (S.D.Ind. filed Feb. 19, 1990). We decline to do so. Such a preliminary finding in a case that was subsequently dismissed by agreement of the parties does not establish likelihood of invalidity, as might a final judgment of invalidity after a full trial on the merits. Moreover, AMMI has not persuaded us that we should in effect allow AMMI to circumvent the doctrine of assignor estoppel. Since AMMI may not challenge validity at a trial on the merits, the court properly determined that Devon will likely succeed on validity at trial
 
 
 [3]
 AMMI also complains that the district court did not view Devon's commercial embodiment. That is of little significance, however, since infringement is determined by comparing an accused device with the claims in suit, not with a preferred or commercial embodiment of the claimed invention. See, e.g., Martin v. Barber, 755 F.2d 1564, 1567, 225 USPQ 233, 235 (Fed.Cir.1985)