Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1272, -1488

SHANGHAI MEIHAO ELECTRIC, INC.,

Plaintiff-Appellee,

v.

LEVITON MANUFACTURING COMPANY, INC.,

Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEVITON MANUFACTURING COMPANY, INC.,

Plaintiff-Appellant,

v.

UNIVERSAL SECURITY INSTRUMENTS, INC.
and USI ELECTRIC, INC.,

Defendants.

Gary Hnath, Bingham McCutchen LLP, of Washington, DC, argued for plaintiff-appellee. Of counsel was Daniel S. Nooter.

Barry G. Magidoff, Greenberg Traurig LLP, of New York, New York, argued for defendant-appellant. With him on the were Paul J. Sutton and Alan Tenenbaum.

Appealed from: United States District Court for the District of Maryland

Judge Andre M. Davis

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1272, -1488

SHANGHAI MEIHAO ELECTRIC, INC.,

Plaintiff-Appellee,

v.

LEVITON MANUFACTURING COMPANY, INC.,

Defendant-Appellant.

-----------------------------------------------------------------------

LEVITON MANUFACTURING COMPANY, INC.,

Plaintiff-Appellant,

v.

UNIVERSAL SECURITY INSTRUMENTS, INC., and
USI ELECTRIC, INC.,

Defendants.

_____

DECIDED:  January 10, 2007

_____

Before NEWMAN, Circuit Judge, CLEVENGER, Senior Circuit Judge, and DYK, Circuit Judge.

CLEVENGER, Senior Circuit Judge.

Declaratory judgment defendant Leviton Manufacturing Co., Inc. ("Leviton") appeals the February 15, 2006 order of the United States District Court for the District of Maryland (1) granting plaintiff Shanghai Meihao Electric, Inc.'s ("Meihao") motion for summary judgment of noninfringement of U.S. Patent No. 6,040,967 ("the '967 patent"), No. 6,246,558 ("the '558 patent"), No. 6,381,112 ("the '112 patent"), and No. 6,437,953

("the '953 patent"),[1] and (2) entering a permanent injunction against Leviton.  We <u>affirm in part and reverse in part</u>.

I

The patents at issue in this case relate to a reset lockout feature in a circuit interrupting device, such as a ground fault circuit interrupter ("GFCI").  A GFCI is a safety device used in conjunction with electric circuitry that "use[s] a trip mechanism to mechanically break an electrical connection between one or more input and output conductors" in the event of a ground fault.[2]  '967 patent col.1 ll.29-30.  The broken electrical connection can subsequently be reset by depressing a reset button.  After a reset under normal circumstances, the GFCI will allow current to resume flowing until another ground fault occurs, at which point the trip mechanism will break the connection once again.  Occasionally, however, either an open neutral condition[3] will develop in the power lines feeding the GFCI, or a ground fault will damage the GFCI to such an extent that it will be unable to detect future ground faults.  In either case, it is desirable to prevent the GFCI from resetting until the problem has been remedied.

---

[1] This action originally involved two additional patents—U.S. Patent No. 6,282,070 and No. 6,288,882—which have subsequently dropped out of the case.

[2] A ground fault occurs when an alternate current path is created from the circuit to ground, such as, for example, when an activated toaster is dropped into a water-filled bathtub.

[3] An open neutral condition develops when the neutral line from the power source separates from the input terminals of the GFCI.  In the prior art, an open neutral condition did not prevent the GFCI from resetting.  Although an appliance plugged into a receptacle having a reset GFCI will not function so long as the open neutral condition persists, the reset GFCI may still allow a dangerous path to ground from a metal surface on the appliance to be created.  Appellant's Br. at 4.

2006-1272, -1488                    2

The patents in suit all relate in one way or another to providing a reset lockout feature that prevents the GFCI from resetting unless certain conditions are met. The relevant portions of the claims at issue are reproduced below:

1. A circuit interrupting device comprising:

. . .

a <u>reset lock-out</u> responsive to the occurrence of said predefined condition such that said reset lock-out is operable between a lock-out position wherein said reset lock-out inhibits resetting of said electrical connection between said input and output conductors and a reset position wherein said reset lock-out does not inhibit resetting of said electrical connection between said input and output conductors; and

a reset mechanism operatively associated with said reset lock-out and said circuit interrupter such that activation of said reset mechanism activates said circuit interrupter which facilitates movement of said reset lock-out from said lock-out position to said reset position by said reset mechanism.

. . .

7. A ground fault circuit interrupting device comprising:

. . .

a reset mechanism having a <u>reset lock-out</u> responsive to activation of said circuit interrupter so as to be movable between a lock-out position wherein said reset lock-out inhibits resetting of said electrical connection between said input and output conductors and a reset position wherein said reset lock-out does not inhibit resetting of said electrical connection between said input and output conductors, wherein when said reset mechanism is activated said circuit interrupter is activated to facilitates movement of said reset lock-out from said lock-out position to said reset position by said reset mechanism and resets said electrical connection between said input and output conductors.

. . .

12. A circuit interrupting device comprising:

. . .

<u>reset lock-out means</u> responsive to activation of said circuit interrupting means for inhibiting resetting of said electrical connection between said input and output conductor means after said circuit interrupting means breaks said connection between said input and output conductor means; and

2006-1272, -1488                    3

reset means disposed within said housing means for activating said circuit interrupting means so that said lock-out means does not inhibit resetting of said electrical connection between said input and output conductor means and for resetting said electrical connection between said input and output conductor means.

'967 patent col.6 l.53–col.8 l.49 (emphasis added).

1. A circuit interrupting device comprising:

. . .

said circuit interrupting device further comprising a <u>reset lockout portion</u> that prevents reestablishing electrical continuity in said phase and neutral conductive paths if said circuit interrupting portion is <u>non-operational</u>, if an open neutral condition exists or if a reverse wiring condition exists, wherein said reset portion comprises:

a reset button; and

at least one reset contact which when depressed is capable of contacting at least a portion of said phase conductive path to cause said predetermined condition, wherein if said circuit interrupting portion is <u>operational</u>, the circuit interrupting portion is activated to disable said reset lockout portion and facilitate reestablishing electrical continuity in said phase and neutral conductive paths, and wherein if said circuit interrupting portion is <u>non-operational</u>, said reset lockout portion remains enabled so that reestablishing electrical continuity in said phase and neutral conductive paths is prevented.

2. A circuit interrupting device comprising:

. . .

said circuit interrupting device further comprising a <u>reset lockout portion</u> that prevents the making of electrical continuity between said first and second conductive paths and between said first and third conductive paths, if said circuit interrupting portion is <u>non-operational</u>;

and wherein said reset portion comprises:

a reset button; and

at least one reset contact which when depressed is capable of contacting at least a portion of one of said first or second conductive paths to cause said predetermined condition, wherein if said circuit interrupting portion is <u>operational</u>, said circuit interrupting portion is activated to disable said

reset lockout portion and facilitate making of electrical continuity between said first and second conductive paths and between said first and third conductive paths, and wherein if said circuit interrupting portion is <u>non-operational</u>, said reset lockout portion remains enabled so that making of electrical continuity between said first and second conductive paths and between said first and third conductive paths is prevented.

. . .

4. A circuit interrupting system comprising:

. . .

said circuit interrupting device further comprising <u>a reset lockout portion</u> that prevents reestablishing electrical continuity in said phase and neutral conductive paths if said circuit interrupting portion is <u>non-operational</u> or if an open neutral condition exists;

and wherein said reset portion comprises:

a reset button; and

at least one reset contact which when depressed is capable of contacting at least a portion of said phase conductive path to cause said predetermined condition, wherein if said circuit interrupting portion is <u>operational</u>, said circuit interrupting portion is activated to disable said reset lockout portion and facilitate reestablishing electrical continuity in said phase and neutral conductive paths, and wherein if said circuit interrupting portion is <u>non-operational</u>, said reset lockout portion remains enabled so that reestablishing electrical continuity in said phase and neutral conductive paths is prevented.

'558 patent col.11 l.62–col.14 l.52 (emphasis added).

1. A circuit interrupting device comprising:
. . .

a circuit interrupter disposed within said housing, the circuit interrupter having an <u>operational</u> state and a <u>non-operational</u> state and configured to break the continuity between said first and second conductive paths upon the occurrence of a predetermined condition;

a reset mechanism configured to make electrical continuity between the first and second conductive paths after said predetermined condition occurs; and

a <u>reset lock-out</u> that prevents the making of electrical continuity between said first and second conductive paths if said circuit interrupter is in the <u>non-operational</u> state; and

wherein activation of the reset mechanism activates the circuit interrupter to be in the <u>operational</u> state to move the reset lock-out to a reset position.
. . .

5. A circuit interrupting device comprising:
. . .

a <u>reset lock-out</u> that prevents reestablishment of electrical continuity between said first and second conductors if said circuit interrupter is <u>non-operational</u>.
. . .

22. A circuit interrupting device comprising:
. . .

a circuit interrupter disposed within said housing, the circuit interrupter having an <u>operational</u> state and a <u>non-operational</u> state and configured to cause electrical discontinuity between said first and second conductors upon the occurrence of a predetermined condition;

a reset device configured to reestablish electrical continuity between the first and second conductors after said discontinuity is caused; and

a <u>reset lock-out</u> device that prevents reestablishment of electrical continuity between said first and second conductors if said third electrical conductor is not connected to a neutral line; and

wherein activation of the reset device activates the circuit interrupter to be in the <u>operational</u> state to move the reset lock-out device to a reset position.

'112 patent col.6 l.54–col.10 l.24 (emphasis added).

1. A reset lockout device comprising:
. . .

a <u>reset actuator lockout</u> connected to the reset actuator for blocking the enabling of the switch reset unless the test succeeds.
. . .

14. A circuit interrupting device for use with an electrical wiring system having at least one conductor comprising:

. . .

a <u>reset lockout</u> portion that prevents reestablishing electrical continuity in said first conductive path and said second conductive path if said circuit interrupter is <u>non-operational</u> or if an open neutral condition exists;

wherein activation of said reset portion first simulates at least one of the predetermined conditions, wherein if said circuit interrupter is <u>operational</u>, the circuit interrupter causes said reset lockout portion to be disabled to facilitate reestablishing electrical continuity in said first and second conductive paths.

'953 patent col.11 l.60–col.14 l.28 (emphasis added).

II

Meihao filed this declaratory judgment action on July 23, 2003, seeking a declaration that it does not infringe the Leviton patents mentioned above. On March 3, 2005, the district court held a claim construction hearing, and subsequently issued a thirty-six page written opinion construing the disputed claim limitations. <u>Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co., Inc.</u>, No. 03-2137 (D. Md. Apr. 22, 2005) ("<u>Claim Construction Opinion</u>").

Although there were many disputed limitations among the several patents in suit, the district court's summary judgment decisions turned on two groups of disputed claim terms: the "operational" terms and the "reset lock-out" terms.[4] The district court construed the terms in each group as follows:

[T]he term "operational" must be construed to mean "working properly," and further, that <u>both the sensing circuitry and the trip mechanism must be working properly</u>. When the circuit interrupter is "operational," it is able to sense a fault and interrupt electrical continuity in response to the fault. "Non-operational" is the opposite of "operational" and must mean that <u>the sensing circuitry or the trip mechanism, or both, are not working properly</u>,

---

[4] The terms in each of these groups are emphasized in the claims recited above.

such that the circuit interrupter is either not able to detect a fault or not able to interrupt the electrical continuity when the fault occurs, or both.

Id., slip op. at 32 (emphasis added).

[A] "reset lock-out" must be construed as the latching finger of the latching member working in cooperation with the contact arm, and equivalents thereof that perform the identical function of inhibiting the resetting of the electrical connection unless the circuit interrupter is operational.

Id., slip op. at 20-21 (emphasis added).

On July 15, 2005, Meihao moved for summary judgment of noninfringement of all asserted claims, and for a permanent injunction to preclude Leviton from pursuing suits involving the same patents and the same accused products. Leviton responded on August 9, 2005, with a cross-motion for summary judgment of infringement of claims 5 and 22 of the '112 patent. The court first considered Leviton's motion and concluded that the Meihao GFCIs do not infringe, either literally or under the doctrine of equivalents, because they do not test the fault sensing circuitry as required by the claims before allowing themselves to be reset. The court next considered Meihao's motion and held that the accused devices do not literally infringe the claims because they do not have a "reset lock-out" that prevents resetting if the circuit interrupter is non-operational. The court further held that there could be no infringement under the doctrine of equivalents because the function of the "reset lock-out" limitations is not met by the accused devices.

Accordingly, the court denied Leviton's motion and granted Meihao's motion. Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co., Inc., No. 03-2137 (D. Md. Jan. 18, 2006) ("Summary Judgment Opinion"). Pursuant to Meihao's motion, but without any

explanation, the district court also entered a permanent injunction which read in relevant part:

> ORDERED that [Leviton] is hereby enjoined from in any way suggesting, asserting, advising, or claiming to third parties, including but not limited to Meihao's customers and their customers, that Meihao's GFCIs infringe the Leviton Lockout Patents asserted in this action by Leviton against Meihao's GFCIs, or suing or threatening a lawsuit for infringement of the Leviton Lockout Patents against third parties based on their use, sale or offer for sale of Meihao's GFCIs.

Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co., Inc., No. 03-2137 (D. Md. Jan. 18, 2006). Shortly after the entry of this injunction, Leviton filed a motion for an order to show cause why the injunction should not be stricken, arguing that the injunction did not comply with Federal Rule of Civil Procedure 65(d) in terms of scope, specificity, or rationale. Leviton further argued that the injunction was improper because there had been no finding of "necessity," as required by the Fourth Circuit. Leviton's motion was at least partially denied:

> The motion for show cause is hereby DENIED.
>
> That said, I agree with Leviton that the form of order entered in this case lacks the specificity and precision that it has a right to insist upon. Obviously, I simply employed the form of order proposed by plaintiff here. Nevertheless, I see no need for the sort of protracted contentiousness that has characterized the Leviton cases.
>
> Leviton's proposed [alternative] order is as inappropriate for its sparseness as is the extant order for its clumsiness. The parties are directed to confer and agree upon an appropriate order and submit same on or before February 10, 2006. The court has no intention to infringe on Leviton's First Amendment rights to say whatever it chooses to say about anything.

JA at A3404.

Pursuant to the direction of the district court, the parties thereafter agreed upon suitable language:

ORDERED that [Meihao's] Motion for Summary Judgment of Non-Infringement is granted and that the Summary Judgment of Non-Infringement on behalf of Meihao is hereby entered in accordance with the Court's January 18, 2006 Memorandum Opinion, and it is further

ORDERED that this Court having found as a matter of law that Meihao's GFCIs do not infringe the claims of the Leviton Reset Lockout patents asserted in this action (U.S. Patent No. 6,040,967, U.S. Patent No. 6,381,112, U.S. Patent No. 6,437,953, U.S. Patent No. 6,246,558 (only claims 1, 2 and 4), U.S. Patent No. 6,282,070 and/or U.S. Patent No. 6,288,882), [Leviton] and its officers, agents, servants, employees and attorneys . . ., and those persons in active concert or participation with them, are hereby enjoined from initiating any suit for infringement of the aforesaid claims against anyone who has or does hereafter buy, sell, offer for sale, import or use a Meihao GFCI. "Meihao GFCIs" are those ground fault circuit interrupters which were the subject of the Court's Memorandum Opinion granting Meihao's Motion for Summary Judgment of Non-Infringement dated January 18, 2006, specifically, Meihao GFCIs having the structure and operation as described in the Court's Memorandum Opinion and as sold in the United States during the years 2003 and 2004, bearing UL File Nos. E220379, E197052, and E224920 and subsequent Meihao GFCIs substantially identical thereto as to their structure and operation. Nothing in this Order is intended to, or shall, prevent Leviton from submitting, or allow Leviton to submit, pleadings, motions or other documents in litigations that were ongoing as of January 18, 2006, to the extent those litigations involve Meihao's GFCIs, or filing a notice of appeal and prosecuting any appeal in this action from this Judgment, nor from exercising its rights under the First Amendment to the U.S. Constitution by stating accurately any facts relating to the judgment, and the effect of a successful appeal, as well as its opinion as to what the result of such appeal may be, but will not otherwise assert infringement or threaten suit for infringement with respect to Meihao GFCIs under the aforesaid claims of the Leviton Reset Lockout patents.

JA at A32-A33. The district court also agreed to this language, and entered the permanent injunction on February 15, 2006. Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co., Inc., No. 03-2137 (D. Md. Feb. 15, 2006).

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a).

III

"We review the district court's claim construction and the grant of summary judgment based thereon without deference." Novartis Pharm. Corp. v. Eon Labs Mfg., 363 F.3d 1306, 1308 (Fed. Cir. 2004).

Where the question on appeal involving the issuance of an injunction is whether the District Court complied with the procedural requirements of the Federal Rules of Civil Procedure, we review that question under the law of the applicable circuit. See Biodex Corp. v. Loredan Biomedical, Inc., 946 F.2d 850, 857 n.10 (Fed. Cir. 1991) (collecting cases); Chemlawn Servs. Corp. v. GNC Pumps, Inc., 823 F.2d 515, 517 (Fed. Cir. 1987); Digital Equip. Corp. v. Emulex Corp., 805 F.2d 380, 382 n.3 (Fed. Cir. 1986) (failure to provide reasons for issuance of injunction reviewed under regional circuit law). In this case, the law of the Fourth Circuit controls. Applying the law of that circuit, "[w]e review the grant of a permanent injunction for an abuse of discretion." Belk v. Charlotte-Mecklenburg Bd. of Educ., 269 F.3d 305, 347 (4th Cir. 2001). "Of course, underlying factual findings are reviewed for clear error, and legal conclusions are reviewed de novo." Va. Soc'y for Human Life, Inc. v. FEC, 263 F.3d 379, 392 (4th Cir. 2001).[5]

---

[5] To be sure, this court applies its own law in cases where the question presented, although procedural in nature, "bears an essential relationship to matters committed to our exclusive control by statute." Biodex, 946 F.2d at 858-59. Here, although Leviton's appeal of the injunction entered below does not appear to have "an essential relationship" to our jurisdiction, we need not decide whether to apply our law instead of Fourth Circuit law because we also review the grant of a permanent injunction for abuse of discretion. Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1301-02 (Fed. Cir 2005).

IV

The crux of this appeal is the district court's construction of the "operational" terms and the "reset lock-out" terms.  We address each of these, and then we turn to the permanent injunction.

A

With respect to "operational," Leviton focuses on the use of that term in claims 5 and 22 of the '112 patent by arguing that the district court improperly imported limitations from a preferred embodiment into the claims.  Leviton's most coherent argument in this regard relates to claim 22, which reads in relevant part:

> 22. A circuit interrupting device comprising:
> . . .
> a circuit interrupter disposed within said housing, the circuit interrupter <u>having an operational state and a non-operational state and configured to cause electrical discontinuity between said first and second conductors upon the occurrence of a predetermined condition</u>;
> . . .
> a reset lock-out device that prevents reestablishment of electrical continuity between said first and second conductors <u>if said third electrical conductor is not connected to a neutral line</u>; and
>
> wherein activation of the reset device <u>activates the circuit interrupter to be in the operational state</u> to move the reset lock-out device to a reset position.

'112 patent col.9 l.17–col.10 l.24 (emphasis added).

According to Leviton, the plain language of the second limitation reproduced above ("a reset lock-out device . . .") demonstrates that claim 22 only prevents reestablishment of electrical continuity if there is an open neutral condition, <u>i.e.</u>, the third wire "is not connected to a neutral line."  As such, the "operational state" of the circuit interrupter referenced in the "wherein" clause is satisfied so long as the circuit interrupter is able "to move the reset lock-out device to a reset position."

Although we agree that activation of the circuit interrupter to be in the operational state is necessary to move the reset lock-out position, the remainder of Leviton's argument is unpersuasive because it ignores the first limitation reproduced above ("a circuit interrupter disposed . . ."), which plainly ties the "operational state" of the circuit interrupter to the ability of the circuit interrupter to "cause electrical discontinuity . . . upon the occurrence of a predetermined condition."[6] The ability of the circuit interrupter to cause discontinuity requires, as Leviton admits, both the sensing circuitry and the trip mechanism to be working properly. Appellant's Br. at 3-4. Accordingly, "activat[ing] the circuit interrupter to be in the <u>operational state</u>" must also require both the sensing circuitry and the trip mechanism to be working properly. This requirement is not inconsistent with, and does nothing to eliminate, the additional requirement of claim 22 that the reset lock-out device must prevent reestablishment of electrical continuity in the event of an open neutral condition.

Leviton attempts to draw an even finer linguistic distinction with respect to claim 5 of the '112 patent:

> Claim 5 does not discuss a device in terms of "operational," it recites a device which will not allow itself to be reset if any one of its circuit interrupter components is "non-operational." Accordingly, there was no basis to limit the claim to a device that will allow reestablishment of electrical continuity <u>only</u> after a complete test of the system to show that it is fully operational.

---

[6]     Such "predetermined conditions" include ground faults, arc faults, appliance leakage faults, immersion faults, and test cycles. '112 patent col.2 ll.27-28. However, an open neutral condition is <u>not</u> a "predetermined condition" because an open neutral condition cuts off power to the trip mechanism of the circuit interrupter. <u>See</u> <u>id.</u> col.3 ll.45-54. And it is axiomatic that if the trip mechanism—which is "electro-mechanical," <u>id.</u> col.3 ll.8-9—has no power, it cannot cause electrical discontinuity. Thus, if an open neutral condition could be one of the "predetermined conditions," the circuit interrupter could not fulfill its stated purpose because it could not be configured to cause discontinuity in response to such a condition.

Appellant's Br. at 25 (emphasis in original).

We disagree. There is simply no way for the device to know in advance <u>which</u> of its circuit interrupter components, if any, are not working properly. Therefore, the device must, as the district court held, be capable of testing both the sensing circuitry and the trip mechanism in order to determine whether the circuit interrupter is operational. To be sure, a situation may arise in which the first of those two components is found to be malfunctioning, thereby rendering a test of the second component unnecessary. That does not mean, however, that both components need not be tested before electrical continuity is reestablished.

Leviton further argues with respect to claim 5 that the doctrine of claim differentiation precludes the district court's construction of "non-operational" because dependent claims 12 and 13 respectively describe preventing the reestablishment of electrical continuity "if said trip mechanism is non-operational," and "if said sensing circuitry is non-operational." '112 patent col.7 l.66 – col.8 l.6. Thus, according to Leviton, independent claim 5 is actually narrower than dependent claims 12 and 13 under the district court's claim construction. <u>See</u> Appellant's Reply Br. at 9-11. "As this court has frequently stated, the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." <u>Liebel-Flarsheim Co. v. Medrad, Inc.</u>, 358 F.3d 898, 910 (Fed. Cir. 2004). However, "that presumption can be overcome if the circumstances suggest a different explanation, or if the evidence favoring a different claim construction is strong." <u>Id.</u> Here, the presumption is clearly overcome because, as explained in the preceding paragraph, the device must be capable of testing both the sensing circuitry and the trip

mechanism in order to determine whether the circuit interrupter is operational. If, as Leviton suggests, electrical continuity could be reestablished when only the trip mechanism is operational, or when only the sensing circuitry is operational, the circuit interrupter would remain non-operational and the device would not function properly, i.e., it would not cause electrical discontinuity upon the occurrence of a predetermined condition. Therefore, claim differentiation does not apply in this case.

Because we are not persuaded by Leviton's arguments, we see no need to disturb the district court's construction of "operational."

B

The thrust of Leviton's "reset lock-out" argument is that the district court improperly held that the function of the reset lock-out is to inhibit the reestablishment of electrical continuity unless the circuit interrupter is operational. Leviton points out that the reset lock-out can also inhibit the reestablishment of electrical continuity if there is an open neutral condition or if the circuit interrupting device is reverse wired. For example, the "reset lock-out" limitation in claim 1 of the '558 patent reads:

> said circuit interrupting device further comprising a reset lockout portion that prevents reestablishing electrical continuity in said phase and neutral conductive paths if said circuit interrupting portion is non-operational, if an open neutral condition exists or if a reverse wiring condition exists[;]

'558 patent col.12 ll.20-25 (emphasis added). Thus, according to Leviton, electrical continuity can be reestablished in some embodiments even if the circuit interrupter is non-operational.

We are not persuaded. Leviton's argument is essentially that the district court's construction requires "or" to be replaced with "and." However, the conditional statement in the excerpt above (i.e., "a reset lockout portion that prevents reestablishing electrical

continuity . . . if said circuit interrupting portion is <u>non-operational</u>, if an open neutral condition <u>exists</u> **or** if a reverse wiring condition <u>exists</u>") is exactly the same as the following conditional statement: "a reset lockout portion that <u>permits</u> reestablishing electrical continuity . . . <u>only</u> <u>if</u> said circuit interrupting portion is <u>operational</u>, an open neutral condition <u>does</u> <u>not</u> <u>exist</u>, **and** a reverse wiring condition <u>does</u> <u>not</u> <u>exist</u>."  It is therefore clear that, even in those claims where additional features are incorporated through "or if" statements, the circuit interrupter must be operational in order to reestablish electrical continuity.  As such, Leviton has not demonstrated a need to reverse the district court's construction.  Because Leviton provides us with no alternative basis on which to disturb the summary judgment of noninfringement entered below, we affirm that portion of the district court's order on appeal.

C

In granting permanent injunctions, district courts are bound by the requirements set forth in Federal Rule of Civil Procedure 56, which provides in relevant part:

> Form and Scope of Injunction or Restraining Order.  (d) Every order granting an injunction and every restraining order <u>shall set forth the reasons for its issuance</u>; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

Fed. R. Civ. P. 56(d) (emphasis added).  Moreover, "[b]efore a court grants a permanent injunction, the court must first find necessity – a danger of future violations." <u>Belk</u>, 269 F.3d at 347.

On its face, the injunction entered by the district court, while specific and reasonably detailed, plainly fails to "set forth the reasons for its issuance." The only arguable reason for the injunction was enunciated in the district court's order denying Leviton's motion to show cause: "I see no need for the sort of protracted contentiousness that has characterized the Leviton cases." Such a reason is insufficient as a matter of law. Patent litigation is often both protracted and contentious. Were that the appropriate standard, every losing litigant would be a permanent-injunction candidate.

We also discern no "necessity" for a permanent injunction. The present case is unlike Kessler v. Eldred, 206 U.S. 285 (1907). There, Kessler and Eldred were competitors in the business of selling electric cigar lighters. Eldred owned a patent for an electric lamp lighter and sued Kessler for patent infringement in the District of Indiana. Kessler prevailed, and a judgment of noninfringement was entered in his favor. Eldred then sued Breitwieser, a user of the very Kessler lighters previously held to be noninfringing, in the Western District of New York. Kessler assumed Breitwieser's defense, and, in light of the previous judgment of noninfringement, sought to enjoin Eldred from pursuing any further lawsuits against users of Kessler's lighters.

Under these facts, the Supreme Court concluded that such an injunction was necessary:

> The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims for damages on account of the use of them, would be to diminish Kessler's opportunities for sale. No one wishes to buy anything, if with it he must buy a law suit. That the effect to be anticipated was the actual effect of the Breitwieser suit is shown by the statement of facts. Kessler's customers ceased to send orders for lighters, and even refused to pay for those which had already been delivered. Any action which has such results is manifestly in

violation of the obligation of Eldred, and the corresponding right of Kessler, established by the judgment. Leaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone. The judgment in the previous case fails of the full effect which the law attaches to it if this is not so. If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it. Having then by virtue of the judgment the right to sell his wares freely without hindrance from Eldred, must Kessler stand by the see that right violated, and then bring an action at law for the resulting damage, or may he prevent the infliction of the unlawful injury by proceedings in personam in equity? If Eldred succeeds in his suit against one of Kessler's customers, he will naturally bring suits against others. He may bring suits against others, whether he succeeds in one suit or not. There may be and there is likely to be a multiplicity of suits. It is certain that such suits if unsuccessful would at the same time tend to diminish Kessler's sales and to impose upon him the expense of defending many suits in order to maintain the right which by a judgment has already been declared to exist. If the suits are successful the result will be practically to destroy Kessler's judgment right.

Id. at 289-90.

Here, by contrast, there is no evidence that Leviton has exhibited, or intends to exhibit, the same cavalier attitude toward the judgment entered against it as Eldred exhibited toward the judgment entered against him. Leviton, as the owner of several issued patents, none of which have been declared invalid, is well within its rights to enforce those patents. And until recently, Leviton had not lost a case against Meihao's GFCIs. In the absence of frivolity, such enforcement actions do not establish a "necessity" for a permanent injunction of the type entered against it below. Therefore, we reverse the district court's order to the extent it permanently enjoins Leviton.

V

In sum, we affirm the district court's entry of summary judgment in favor of Meihao and we reverse the district court's entry of a permanent injunction against Leviton.

COSTS

No costs.